614 P.2d 786 (1980)
In the Matter of S.B., a Minor under the age of 18 years, Appellant,
v.
STATE of Alaska, Appellee.
No. 4445.
Supreme Court of Alaska.
July 18, 1980.
*787 Deborah A. Paquette, Asst. Public Defender, and Brian Shortell, Public Defender, Anchorage, for appellant.
Rhonda F. Butterfield, Asst. Dist. Atty., Kenai, and Avrum M. Gross, Atty. Gen., Juneau, for appellee.
Before RABINOWITZ, C.J., CONNOR, BURKE and MATTHEWS, JJ., and DIMOND, Senior Justice.

OPINION
RABINOWITZ, Chief Justice.
This appeal presents the question of the voluntariness of a juvenile's confession.[1] At the time of the events at issue, S.B. was fourteen years old and was in a special education program in Soldotna. On January 7, 1978, he allegedly acted as lookout while a companion burglarized three homes in Kenai. On January 16, Lt. Marshall Mahurin of the Kenai police telephoned S.B.'s father and requested that he and S.B. come to the police station so Mahurin could talk to S.B. There, Mahurin advised S.B. of his Miranda rights in the presence of his parents, and then began questioning S.B. concerning his alleged participation in the burglaries. S.B. initially denied any involvement in the burglaries. Testimony was conflicting as to what transpired next. S.B. testified that Mahurin told him that if he told the truth, Mahurin would recommend *788 that no action be taken against him. S.B.'s parents testified that Mahurin had promised to recommend leniency if S.B. "came clean." Mahurin, however, denied stating that no charges would be brought; he testified that he told S.B. and his father that he had no control over what would happen, and that he could only inform the juvenile authorities of whether S.B. cooperated during questioning.
Following this initial discussion, S.B.'s father asked Mahurin to leave so he could talk to his son alone. According to S.B.'s father, he advised S.B. either to say nothing and get a lawyer or to tell Mahurin the truth, and he recommended the latter course because of Mahurin's promise to recommend leniency. S.B. then admitted to Mahurin his involvement.
A petition of alleged delinquency was thereafter filed against S.B.S.B. responded with a "motion for specific enforcement," which a subsequent memorandum described as a motion to suppress S.B.'s confession, and which the superior court treated as such. Following an evidentiary hearing, the motion was denied. The case went to trial, and the superior court found S.B. guilty of the allegations of the petition. He was subsequently committed to the custody of the Department of Health and Social Services but not institutionalized. S.B. has appealed the adjudication of delinquency based on the denial of the motion to suppress his confession.
S. B. alleges that the confession should have been suppressed for the reason that he never made a knowing and voluntary waiver of his Miranda rights, and more particularly because the confession was induced by a promise of leniency from Lt. Mahurin. We conclude that the case must be remanded because the superior court applied an incorrect legal standard in determining whether S.B.'s confession was voluntary.
In Miranda, the Unites States Supreme Court held:
If the interrogation continues without the presence of an attorney and a statement is taken, a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel.
.....
[A] valid waiver will not be presumed simply from the silence of the accused after warnings are given or simply from the fact that a confession was in fact eventually obtained.
Miranda v. Arizona, 384 U.S. 436, 475, 86 S.Ct. 1602, 1628, 16 L.Ed.2d 694, 724 (1966). The waiver need not be express to be valid, however. North Carolina v. Butler, 441 U.S. 369, 99 S.Ct. 286, 60 L.Ed.2d 286 (1979). We have held that the state can meet the burden of proving a valid waiver has occurred if it shows the confession was knowing and voluntary by a preponderance of the evidence,[2] looking to the totality of the circumstances surrounding the confession.[3] Recently, we have held the "totality of circumstances" test applicable to the waiver of Miranda rights by a juvenile. Quick v. State, 599 P.2d 712, 719 (Alaska 1979). There we stated:
The mere fact that a person is under the age of majority does not automatically render him incapable of making a knowing and voluntary waiver. The surrounding circumstances must be considered in each case to determine whether a particular juvenile had sufficient *789 knowledge and maturity to make a reasoned decision. Among the factors to be considered are age, intelligence, length of the questioning, education, prior experience with law enforcement officers, mental state at the time of the waiver, and whether there has been any prior opportunity to consult with a parent, guardian, or attorney.
Id. (footnote omitted). The manner of interrogation, including whether any threats or promises induced the confession, is also an important factor to be considered. Sprague v. State, 590 P.2d 410, 414 (Alaska 1979). To render a confession involuntary, a promise need not take the form of an express guarantee of more lenient treatment:
But a confession in order to be admissible must be free and voluntary; that is, must not be extracted by any sort of threats or violence, nor obtained by any direct or implied promises, however slight, nor by the exertion of any improper influence.[4]
Bram v. United States, 168 U.S. 532, 542-43, 18 S.Ct. 183, 187, 42 L.Ed. 568, 573 (1897), cited in Sprague v. State, 590 P.2d 410, 413 n. 6 (Alaska 1979). Where the accused is a juvenile, the burden on the state of showing that the confession was voluntary is even heavier than it would be with an adult. Quick v. State, 599 P.2d 712, 720 (Alaska 1979).[5]
In the case at bar, S.B.'s age and indicated lack of maturity for his age are grounds for questioning his capacity for making a reasoned decision by himself as to whether to confess.[6] However, his parents were present with him throughout the interrogation, and were thus informed as well as he of the nature of the charges against their son and his Miranda rights. S.B. was able to consult with his parents in private prior to talking to the police officer. S.B.'s father's testimony indicates his understanding of his son's Miranda rights.[7] These factors would lead us to conclude that the waiver was made knowingly and intelligently.
However, evidence in the record also indicates that some form of promise of leniency may have been made by Lt. Mahurin to S.B. in exchange for a confession, and that both S.B. and his parents may have relied on this inducement in reaching the decision to confess. The superior court found that Lt. Mahurin "did, in some way, form or manner indicate to [S.B.] that there would be some leniency." But, in denying the suppression motion, the superior court indicated that it considered some promises of leniency to be insufficient inducement to render the confession inadmissible:
The testimony presented simply does not indicate that any fatal promises were made no matter how thinly one stretches authority presented by the minor. Had the officer indicated that no charges would be filed in exchange for the young man's candor, a different fact situation would exist and, as a matter of public policy a suppression could have resulted.
*790 These statements reveal that the superior court misapplied the Bram standard which we have previously alluded to for determining the voluntariness of a confession. More particularly, "any direct or implied promises, however slight" of leniency are sufficient to render a confession involuntary and invalidate an otherwise deliberate waiver of Miranda rights by an accused. The finding by the superior court that a promise of leniency was made by Lt. Mahurin places a heavy burden upon the state to demonstrate by a preponderance of the evidence that S.B.'s confession was not tainted by this promise.
On the question of whether a confession is voluntary, this court normally will examine the entire record and make an independent determination of whether the trial court's ruling was correct. Sprague v. State, 590 P.2d 410, 413 (Alaska 1979). In this case, however, because the superior court employed an incorrect legal test, a finding of fact essential to our review, namely, whether S.B.'s confession was induced by Lt. Mahurin's promise has not been made. Since the testimony in the record is in conflict on this question,[8] we remand to the superior court, which was in a better position to judge the credibility and demeanor of the witnesses, to make this finding and correctly apply the rule of law enunciated in this opinion.[9]
The judgment of the superior court is vacated and the case Remanded for further proceedings in accordance with this opinion.
BOOCHEVER, J., not participating.
NOTES
[1] See Quick v. State, 599 P.2d 712 (Alaska 1979).
[2] Quick v. State, 599 P.2d 712, 718 (Alaska 1979); Hampton v. State, 569 P.2d 138, 141 n. 6 (Alaska 1977); Schade v. State, 512 P.2d 907, 917 (Alaska 1973); see Lego v. Twomey, 404 U.S. 477, 489, 92 S.Ct. 619, 626, 30 L.Ed.2d 618, 627 (1972); Peterson v. State, 562 P.2d 1350, 1363 (Alaska 1977). This is the federal standard, and we have never been persuaded to adopt a higher standard. See Eben v. State, 599 P.2d 700, 709 n. 26 (Alaska 1979).
[3] Quick v. State, 599 P.2d 712, 718 (Alaska 1979); Ladd v. State, 568 P.2d 960, 967 (Alaska 1977), cert. denied, 435 U.S. 928, 98 S.Ct. 1498, 55 L.Ed.2d 524 (1978); Schade v. State, 512 P.2d 907, 916 (Alaska 1973). See also Hampton v. State, 569 P.2d 138, 141 (Alaska 1977); Peterson v. State, 562 P.2d 1350, 1363 (Alaska 1977).
[4] The state takes no issues with appellant's position that the language "obtained by any direct or implied promises, however slight," should be literally applied in this case, and we accept appellant's position. We note, however, that the Second Circuit has observed that this language has never been applied with "wooden literalness." United States v. Ferrara, 377 F.2d 16, 17 (2nd Cir.), cert. denied, 389 U.S. 908, 88 S.Ct. 225, 19 L.Ed.2d 225 (1967). See also United States v. Reynolds, 532 F.2d 1150, 1158-59 (7th Cir.1976).
[5] By this statement in Quick, we meant that when the accused is a juvenile, great care must be taken to show the confession not only was not the product of coercion or suggestion, but that it also did not result from the child's ignorance of his rights, or from adolescent fantasy, fright, or despair. 599 P.2d at 720 n. 11. Our adoption in Quick of the "preponderance of evidence" standard for showing the voluntariness of a juvenile's confession disposes of S.B.'s contention that this court should adopt the "reasonable doubt" burden of proof for this question. 599 P.2d at 718.
[6] At the time of the questioning, S.B. was in the ninth grade, but was enrolled in a special education program for disturbed youngsters at Soldotna Junior High School. A psychological evaluation indicated that S.B. was immature for his age and was upset due to the impending divorce of his parents.
[7] See note 8 infra.
[8] S.B.'s testimony at the evidentiary hearing was as follows:

Q: All right. What influenced you to change your mind and to talk to Lieutenant Mahurin?
A: Oh, figured that  I just figured that I'd done it and that I had to do something about it so I just told him.
Q: Okay. Did you expect any special considerations as a result of your making these statements and admitting everything? What did you expect in turn for making these statements?
A: Well, I thought that what he said was what he was going to do so I . . ..
Q: Okay. What did you think he was going to do if you told him. . . .
A: Thought he was  I thought he was just going to  nothing would happen to me, I might be put on probation for a while, maybe even no action taken against me at all.
S.B. was then asked if he would have confessed absent Mahurin's statements about leniency, and S.B. responded:
I don't know. . . . I was going to  I was going to tell him the truth, I was a little bit scared to and I just decided I had to sooner or later. So I did.
On cross-examination, S.B. was asked whether he confessed because "it was true" or because of a promise by Mahurin, and S.B. stated:
Well, I  I told him  told him that it  I told him that because it was true.
Mrs. B., when asked whether the offer of leniency was one of the reasons she and her husband advised S.B. to tell the truth, replied, "I can't really say that, I wanted to know." When again asked if the decision to have S.B. talk to Mahurin was influenced by the promise of leniency, she responded, "I don't know."
Mr. B., however, testified:
I asked the lieutenant to leave and he did and I told [S.B.] at that time that he either shut his mouth and doesn't say anything and we get an attorney or he tells the complete truth when we ask the lieutenant to come back. And I told him that I strongly recommend that he tell the complete truth because the lieutenant did say something about the fact that his recommendation of leniency would be there and that it's an important consideration.
[9] In future cases, it will be a great aid to the trial court's determinations and our own review of the record if an electronic record of the police interview with a defendant is available from which the circumstances of a confession or other waiver of Miranda rights may be ascertained. See Mallott v. State, 608 P.2d 737, 743 n. 5 (Alaska 1980).