Donald STEPHAN, Petitioner,

v.

STATE of Alaska, Respondent.

Malcolm Scott HARRIS,
Petitioner/Cross-Respondent,

v.

STATE of Alaska,
Respondent/Cross-Petitioner.

Nos. S–387, S–406.

Supreme Court of Alaska.

Dec. 6, 1985.

Tina Kobayashi, Christine Schleuss, Asst. Public Defender, Dana Fabe, Public Defender, Anchorage, for petitioner Stephan.

Steven P. Oliver, Anchorage, for petitioner/cross-respondent Harris.

Cynthia M. Hora, Asst. Atty. Gen., Anchorage, Norman Gorsuch, Atty. Gen., Juneau, for respondent/cross-petitioner.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

BURKE, Justice.

■ More than five years ago, in *Mallott v. State*, 608 P.2d 737 (Alaska 1980), we informed Alaska law enforcement officials that "it is incumbent upon them to tape record, where feasible, any questioning [of criminal suspects,] and particularly that which occurs in a place of detention." *Id.* at 743 n.5 (citation omitted). This requirement (hereinafter the *Mallott* rule) was again noted in *S.B. v. State*, 614 P.2d 786 (Alaska 1980), with the observation that an electronic record of such interviews "will be a great aid" when courts are called upon to determine "the circumstances of a confession or other waiver of [a suspect's] *Miranda* rights." *Id.* at 790 n.9. In a third case, *McMahan v. State*, 617 P.2d 494 (Alaska 1980), *cert. denied*, 454 U.S. 839,

102 S.Ct. 146, 70 L.Ed.2d 121 (1981), the recording requirement was repeated, with the further statement that "if *Miranda* rights are read to the defendant, this too should be recorded." 617 P.2d at 499 n.11. Today, we hold that an unexcused failure to electronically record a custodial interrogation conducted in a place of detention violates a suspect's right to due process, under the Alaska Constitution,[1] and that any statement thus obtained is generally inadmissible.[2]

## I. FACTS

The relevant facts in the two cases now before us are similar. Malcolm Scott Harris and Donald Stephan, petitioners, were arrested on unrelated criminal charges, taken to police stations and questioned by police officers. Harris was interrogated on two separate occasions; Stephan was interrogated only once. Both men made inculpatory statements. In each instance, a working audio or video recorder was in the room and was used during part, but not all, of the interrogation. The officers, in each case, offered no satisfactory excuse for their clear disregard of the *Mallott* rule.[3]

## II. PROCEEDINGS BELOW

Prior to their respective trials, Harris and Stephan both moved to suppress confessions made during their interrogations. At the suppression hearings there was conflicting testimony about what occurred during the unrecorded portions of the interviews. Harris claimed that, in his first interrogation, he was not informed of his *Miranda* rights[4] at the beginning of the session, that the questioning continued after he asserted his right to remain silent, and that the officer made threats and promises during the untaped portions. Stephan claimed that his ultimate confession was induced by promises of leniency and was obtained in the absence of an attorney, after he requested one. In both cases, the officers' testimony was to the contrary.[5] Without a full recording to resolve the conflict, the superior court was required to evaluate the credibility of the witnesses and choose which version of the unrecorded events to believe. In each case, the court chose the police officers' recollections and determined that the confession was voluntary and, thus, admissible at trial.[6] Harris

---

1. Alaska Const. art. I, § 7 provides, in part: "No person shall be deprived of life, liberty, or property without due process of law."

2. We are not alone in recognizing the importance of recording custodial interrogations. *See Hendricks v. Swenson,* 456 F.2d 503, 506–07 (8th Cir.1972) (suggesting that videotapes of interrogations protect a defendant's rights and are a step forward in the search for truth); *Ragan v. State,* 642 S.W.2d 489, 490 (Tex.Crim.App.1982) (Tex.Code Crim.Proc.Ann. art. 38.22, § 3 (Vernon 1979) requiring that oral statements of the accused during custodial interrogations must be recorded in order to be admissible); Model Code of Pre-Arraignment Procedure § 130.4 (Proposed Official Draft 1975) (requiring sound recordings of custodial interviews). *See generally* Kamisar, *Forward: Brewer v. Williams—A Hard Look at a Discomfitting Record,* 66 Geo. L.J. 209 (1977–78); Williams, *The Authentication of Statements to the Police,* Crim.L.Rev. 6 (Jan. 1979).

3. One officer stated that it was "normal practice" to get the suspect's statement "laid out in the desired manner," and only then record the full, formal confession. Another officer explained that a suspect is more at ease and likely to talk without a tape recorder running.

4. *See Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) (failure to warn a suspect of his right to counsel and right to remain silent, prior to custodial interrogation, renders the suspect's statements inadmissible).

5. Conflicts of this sort are typical in confession cases. *See, e.g., Meyer v. State,* 627 P.2d 636 (Alaska 1981); *S.B. v. State,* 614 P.2d 786 (Alaska 1980); *Troyer v. State,* 614 P.2d 313 (Alaska 1980); *Quick v. State,* 599 P.2d 712 (Alaska 1979); *Sprague v. State,* 590 P.2d 410 (Alaska 1979); *Van Cleve v. State,* 649 P.2d 972 (Alaska App.1982); *Johnson v. State,* 631 P.2d 508 (Alaska App.1981).

6. In *Harris v. State,* 678 P.2d 397 (Alaska App. 1984), Judge Singleton stated: "The importance of ... a tape recording [in cases such as this] lies in the fact that trial courts and appellate courts tend to trust police officers' recollections of what occurred at the expense of the criminal defendant's account. Thus, in the absence of a tape recording, the prosecuting authorities invariably win the swearing contest." 678 P.2d at 414 (Singleton, J., concurring and dissenting). While Judge Singleton's observation may be an overstatement in absolute terms, it is probably generally valid.

and Stephan were ultimately found guilty and filed notices of appeal.

The Alaska Court of Appeals [7] concluded, in each case, that there was a violation of the *Mallott* rule, but declined to adopt an exclusionary rule. Both convictions were affirmed. Harris and Stephan petitioned this court for hearing, pursuant to Appellate Rule 302, and their petitions were granted. Given the factual similarities and the common legal issue, we ordered the two cases consolidated.

## III. RECORDING IS A REQUIREMENT OF STATE DUE PROCESS

In its decision, the court of appeals acknowledged: "[T]he supreme court has clearly stated in three separate cases that the police are under a duty to record statements which suspects make where recording is feasible. That admonition cannot be ignored." *Harris v. State*, 678 P.2d 397, 404 (Alaska App.1984).[8] The court, nevertheless, refused to adopt a general exclusionary rule, stating:

> [W]e believe that the issue of what sanction is appropriate is best approached on a case by case basis.... Exactly what

sanction, if any, to apply for the failure to record a defendant's statement in a given case is a decision which is best left to the sound discretion of the trial court under the standards set forth in *Putnam v. State*, 629 P.2d 35, 43–44 (Alaska 1980).[9]

*Id.* at 404–05

 The court of appeals' refusal to adopt an exclusionary rule in these circumstances is perhaps due to failure on our part to adequately explain the full significance of our prior decisions. Electronic recording of suspect interrogations was described in those cases, rather ambiguously, as "part of [a law enforcement agency's] duty to preserve evidence." *Mallott v. State*, 608 P.2d at 743 n.5 (citing *Catlett v. State*, 585 P.2d 553, 558 n. 5 (Alaska 1978)).[10] Today, we resolve that ambiguity. Such recording is a requirement of state due process when the interrogation occurs in a place of detention and recording is feasible.[11] We reach this conclusion because we are convinced that recording, in such circumstances, is now a reasonable and necessary safeguard, essential to the adequate protection of the accused's right to counsel, his right against self incrimina-

---

**7.** *See Harris v. State*, 678 P.2d 397 (Alaska App. 1984); *Stephan v. State*, Memorandum Opinion and Judgment No. 538 (Alaska App., March 7, 1984) (unpublished).

**8.** This statement was made in *Harris*, but in Stephan's appeal, the court concluded: "Our decision in *Harris* dictates the result in this case." *Stephan v. State*, Memorandum Opinion and Judgment No. 538 at 4.

**9.** In *Putnam*, the appellant claimed that the trial court erred in refusing to strike the testimony of a prosecution witness, as a sanction for the state's failure to produce the tapes of two interviews with that witness. The tapes in question had been lost or destroyed prior to trial. We held that the loss or destruction of such evidence "does not automatically trigger the imposition of sanctions.... What, if any, sanctions are appropriate is to be determined by weighing the degree of culpability involved on the part of the state, the importance of the evidence which has been lost, and the evidence of guilt which is adduced at trial." 629 P.2d at 43.

**10.** In *Catlett*, we held that, because of the important due process rights involved, evidence

should not be destroyed based on an investigator's evaluation of its usefulness. Instead, state investigative agencies should have standard procedures for the preservation of evidence obtained during an investigation. 585 P.2d at 558 n.5. The destruction of photographs in *Catlett* did not amount to a due process infringement because the photographs would not have raised a reasonable doubt in the jurors' minds as to the defendant's guilt.

**11.** Unif.R.Crim.P. 243 (Proposed Final Draft 1974) provides in pertinent part:

> The information of rights, any waiver thereof, and any questioning shall be recorded upon a sound recording device whenever feasible and in any case where questioning occurs at a place of detention.

While we assume that most law enforcement agencies will employ audio or video tape recordings as the most efficient and economical means of preserving the contents of such interviews, the use of alternative methods, such as the preparation of a verbatim transcript by a certified shorthand reporter, in lieu of an electronic device, would also satisfy the requirements of state due process. Thus, "electronic" recording is not a strict requirement.

tion and, ultimately, his right to a fair trial.[12]

█ It must be emphasized that *our holding is based entirely upon the requirements of article I, section 7, of the Alaska Constitution,* as interpreted by this court. *See Michigan v. Long,* 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983) (a state court's reliance on federal authority will be presumed, unless its reliance on independent state grounds is clear from the face of the court's opinion). We accept the state's argument that custodial interrogations need not be recorded to satisfy the due process requirements of the United States Constitution, because a recording does not meet the standard of constitutional materiality recently enunciated by the United States Supreme Court in *California v. Trombetta,* 467 U.S. 479, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984).[13] In interpreting the due process clause of the Alaska Constitution, however, we "remain free to adopt more rigorous safeguards governing the admissibility of ... evidence than those imposed by the Federal Constitution." 467 U.S. at ——, 104 S.Ct. at 2535 n. 12, 81 L.Ed.2d at 423–24 n.12.[14] Thus, as we have done on previous occasions, we construe Alaska's constitutional provision, in this instance, as affording rights beyond those guaranteed by the United States Constitution. *See State v. Glass,* 583 P.2d 872, 876 n.12 (Alaska 1978) *modified by City and Borough of Juneau v. Quinto,* 684 P.2d 127 (Alaska 1984) (warrant requirement applied to electronic monitoring of a police informant's conversations with a suspect).

In *Municipality of Anchorage v. Serrano,* 649 P.2d 256 (Alaska App.1982), the Alaska Court of Appeals extended the state's duty to preserve evidence to include breath samples taken during the administration of a breathalyzer test. Given the importance of breath samples in cases involving a charge of driving while intoxicated, and the minimal cost and effort involved in obtaining them, the court of appeals explicitly held that the due process clause of the Alaska Constitution requires the state to gather and preserve a defendant's breath sample. *Id.* at 258. The need to insure that the voluntariness of a confession can be confirmed by reference to an accurate and complete record is at least as important as the need to insure that the validity of breathalyzer test results can be independently tested. Given the relative ease with which such confirmation can be provided, by means of an electronic recording, we see no legitimate reason not to require it, at least to the extent mandated by this opinion.

█ When a defendant claims that his confession is involuntary, the Constitution of the United States imposes a heavy burden. Before the confession will be admitted, the prosecution must show a knowing and intelligent waiver of the defendant's federal privilege against self incrimination and his right to counsel. *Miranda v. Arizona,* 384 U.S. 436, 475, 86 S.Ct. 1602, 1628,

---

**12.** The right to counsel and the right against self incrimination are both rights specifically guaranteed by the Alaska and United States Constitutions. Alaska Const. art. I, §§ 9, 11; U.S. Const. amend. V, VI and XIV.

**13.** In *Trombetta* the Court held that federal due process does not require law enforcement agencies to preserve breath samples for the defendant's independent review, even though the process is technically feasible. The Court reasoned that the policy of non-preservation of breath samples was not prohibited under the United States Constitution because it did not meet the test of constitutional materiality. To meet this test, "evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and also be of such a nature that the

defendant would be unable to obtain comparable evidence by other reasonably available means." 467 U.S. at ——, 104 S.Ct. at 2534, 81 L.Ed.2d at 422. *Compare Municipality of Anchorage v. Serrano,* 649 P.2d 256 (Alaska App. 1982) (Alaska due process clause requires preservation of breath samples in drunk driving cases).

**14.** In *Trombetta* the United States Supreme Court cited two examples of the exercise of this authority—our own decision in *Lauderdale v. State,* 548 P.2d 376 (Alaska 1976) (requiring the preservation of breathalyzer test ampoules) and *City of Lodi v. Hine,* 107 Wis.2d 118, 318 N.W.2d 383 (1982) (interpreting a state statute that requires the preservation of breathalyzer test ampoules).

16 L.Ed.2d 694, 724 (1966). Under the Alaska Constitution, the state's obligation is no less burdensome.

The contents of an interrogation are obviously material in determining the voluntariness of a confession. The state usually attempts to show voluntariness through the interrogating officer's testimony that the defendant's constitutional rights were protected. The defendant, on the other hand, often testifies to the contrary. The result, then, is a swearing match between the law enforcement official and the defendant, which the courts must resolve.[15]

> The difficulty in depicting what transpires at such interrogations stems from the fact that in this country they have largely taken place incommunicado.
>
> ....
>
> ... Interrogation still takes place in privacy. Privacy results in secrecy and this in turn results in a gap in our knowledge as to what in fact goes on in the interrogation rooms.

*Miranda*, 384 U.S. at 445, 448, 86 S.Ct. at 1612, 1614, 16 L.Ed.2d at 707, 709. Thus, we believe a recording requirement is justified, because "a tape recording provides an objective means for evaluating what occurred during interrogation." *Harris v. State*, 678 P.2d at 414 (Singleton, J., concurring and dissenting).

Although there are undoubtedly cases where the testimony on one side or the other is intentionally false, dishonesty is not our main concern. Human memory is often faulty—people forget specific facts, or reconstruct and interpret past events differently.

> It is not because a police officer is more dishonest than the rest of us that we ... demand an objective recordation of the critical events. Rather, it is because we

are entitled to assume that he is no less human—no less inclined to reconstruct and interpret past events in a light most favorable to himself—that we should not permit him to be a "judge of his own cause."

*Kamisar, supra* note 2, at 242–43 (citation omitted). Defendants, undoubtedly, are equally fallible.

In the absence of an accurate record, the accused may suffer an infringement upon his right to remain silent and to have counsel present during the interrogation. Also, his right to a fair trial may be violated, if an illegally obtained, and possibly false, confession is subsequently admitted. An electronic recording, thus, protects the defendant's constitutional rights, by providing an objective means for him to corroborate his testimony concerning the circumstances of the confession.

The recording of custodial interrogations is not, however, a measure intended to protect only the accused; a recording also protects the public's interest in honest and effective law enforcement, and the individual interests of those police officers wrongfully accused of improper tactics. A recording, in many cases, will aid law enforcement efforts, by confirming the content and the voluntariness of a confession, when a defendant changes his testimony or claims falsely that his constitutional rights were violated. In any case, a recording will help trial and appellate courts to ascertain the truth.[16]

The concept of due process is not static; among other things, it must change to keep pace with new technological developments. For example, the gathering and preservation of breath samples was previously impractical. Now that this procedure is tech-

---

**15.** In most confession cases that have reached the United States Supreme Court, the actual events that occurred in the interrogation room have been disputed. Grano, *Voluntariness, Free Will, and the Law of Confessions*, 65 Va.L.Rev. 859, 898 n.192 (1979). Such disputes are equally typical in the cases that have come before the appellate courts of this state. *See supra* note 5.

**16.** As the Colorado Supreme Court stated:

> The trial of a criminal case is not a game of fox and hounds in which the state attempts to outwit and trap a quarry. It is, instead, a sober search for truth, in which not only the resources of the defendant, but those readily available to the state must be put to work in aid of that search.

*Garcia v. District Court*, 197 Colo. 38, 589 P.2d 924, 930 (1979) (citation omitted).

nologically feasible, many states require it, either as a matter of due process or by resort to reasoning akin to a due process analysis.[17] The use of audio and video tapes is even more commonplace in today's society. The police already make use of recording devices in circumstances when it is to their advantage to do so. Examples would be the routine video recording of suspect behavior in drunk driving cases and, as was done in these cases, the recording of formal confessions. Furthermore, media reports indicate that many Alaska police officers have purchased their own recorders, carry them while on duty and regularly record conversations with suspects or witnesses, in order to protect themselves against false accusations.[18] When a portable recorder has not been available, some officers have even used their patrol car radio to record conversations through the police dispatch center.[19]

In both of the cases before us, the police were engaged in custodial interrogations of suspects in a place of detention. A working recording device was readily available, but was used to record only part of the questioning. Compliance with the recording rule is not unduly burdensome under these circumstances. Turning the recorder on a few minutes earlier entails minimal cost and effort. In return, less time, money and resources would have been consumed in resolving the disputes that arose over the events that occurred during the interrogations.

■ The only real reason advanced by police for their frequent failure to electronically record an entire interrogation is their claim that recordings tend to have a "chilling effect" on a suspect's willingness to talk. Given the fact that an accused has a constitutional right to remain silent, under both the state and federal constitutions, and that he must be clearly warned of that right prior to any custodial interrogation, this argument is not persuasive.[20]

■ In summary, the rule that we adopt today requires that custodial interrogations in a place of detention, including the giving of the accused's *Miranda* rights, must be electronically recorded. To satisfy this due process requirement, the recording must clearly indicate that it recounts the entire interview. Thus, explanations should be given at the beginning, the end and before and after any interruptions in the recording, so that courts are not left to speculate about what took place.

■ Since its announcement, the *Mallott* rule has always included a proviso, "when feasible." The failure to electronically record an entire custodial interrogation will, therefore, be considered a violation of the rule, and subject to exclusion, *only if the failure is unexcused.* Acceptable excuses might include an unavoidable power or equipment failure, or a situation where the suspect refused to answer any questions if the conversation is being recorded.[21] We need not anticipate all such possible excuses here, for courts must carefully scrutinize each situation on a case-by-case basis. Any time a full recording is not made, however, the state must persuade the trial court, by a preponderance of the evidence, that recording was not feasible under the circumstances,[22] and in

**17.** *See Municipality of Anchorage v. Serrano,* 649 P.2d 256 (Alaska App.1982); *Baca v. Smith,* 124 Ariz. 353, 604 P.2d 617 (1979); *Garcia v. District Court,* 197 Colo. 38, 589 P.2d 924 (1979); *State v. Lovato,* 94 N.M. 780, 617 P.2d 169 (App. 1980).

**18.** Anchorage Daily News, Jan. 25, 1985, at C–1, col. 6.

**19.** *Id.*

**20.** Also relevant to this argument, perhaps, is the fact that, when the interrogation occurs in a place of detention and the suspect knows or has

reason to know he is speaking to a police officer, there is no constitutional requirement that the suspect be informed that the interview is being recorded. *City and Borough of Juneau v. Quinto,* 684 P.2d 127 (Alaska 1984); *Palmer v. State,* 604 P.2d 1106 (Alaska 1979).

**21.** We hasten to add, however, that a suspect has no constitutional right *not* to have his interrogation recorded. *See supra* note 20.

**22.** In each of the cases at bar, the officers failed to comply with the rule, although such compliance was clearly feasible, and no legitimate ex-

such cases the failure to record should be viewed with distrust.[23]

## IV. REMEDY

■ The court of appeals, in *Harris*, 679 P.2d at 405, concluded that the determination of the appropriate "sanction" for a violation of the *Mallott* rule is best left to the sound discretion of the trial court, under the standards set forth in *Putnam v. State*, 629 P.2d 35, 43–44 (Alaska 1980).[24] We, however, reject this choice of remedy. Instead, we adopt a general rule of exclusion. While other remedies may each have their merits, we believe an exclusionary rule will best protect the suspects' constitutional rights, provide clear direction to law enforcement agencies and lower courts, and preserve the integrity of our justice system.[25]

In *State v. Sundberg*, 611 P.2d 44 (Alaska 1980), we declined to apply an exclusionary rule to violations of the forcible arrest statute (AS 12.25.080). In the absence of a history of excessive force in arrests, we were persuaded that application of an exclusionary rule would, at best, achieve only a marginal deterrent effect. The record in the present cases, however, shows that law enforcement agencies and lower courts have repeatedly failed to give due regard to the protections the *Mallott* rule is intended to provide, even though the rule was first announced over five years ago.[26] We believe that a strong and certain remedy will have a considerable deterrent effect in future cases. Compliance imposes such minimal costs and burdens on law enforcement agencies that they will have little to gain from noncompliance.

Another reason we were unwilling to apply the exclusionary rule in *Sundberg* was because we reasoned that other deterrents [27] rendered the adoption of the exclusionary rule unnecessary. This rationale does not apply to violations of the recording rule. The imposition of sanctions against an *individual* officer will not necessarily solve what appears to be a *systemic* problem. Agency policy and operations must change, not simply individual behaviors. Once they are fully aware of the consequences of unexcused violations of

---

cuses were offered for their noncompliance. Thus, the defendants' confessions should not have been admitted.

**23.** If the court determines that a recording of the interrogation was not feasible, despite good faith efforts by the law enforcement officials involved, the state still carries the burden of proving the confession was knowing and voluntary. This, too, must be proved by a preponderance of the evidence. *S.B. v. State*, 614 P.2d 786, 788 (Alaska 1980); *Quick v. State*, 599 P.2d 712, 718 (Alaska 1979); *Hampton v. State*, 569 P.2d 138, 141 n. 6 (Alaska 1977).

**24.** Judge Singleton, dissenting in part, urged "suppression of the confession in cases in which the defendant testifies to facts which, if true, would invalidate the confession, and the police officer's contradictory testimony is uncorroborated." *Harris*, 678 P.2d at 414 (Singleton, J., concurring and dissenting) (footnote omitted).

**25.** In determining the appropriate remedy, we have tried to balance "the purpose behind excluding illegally obtained evidence [against] the interest in admitting reliable evidence." *Copelin v. State*, 659 P.2d 1206, 1215 (Alaska 1983) (Compton, J., dissenting); *State v. Sears*, 553 P.2d 907, 912 (Alaska 1976). Previously we have identified two purposes of the exclusionary

rule: (1) to deter unconstitutional methods of law enforcement and (2) to insure judicial integrity by prohibiting courts from becoming party to "lawless invasions of the constitutional rights of citizens by permitting unhindered governmental use of the fruits of such invasions." *Sears*, 553 P.2d at 912 (quoting *Terry v. Ohio*, 392 U.S. 1, 13, 88 S.Ct. 1868, 1875, 20 L.Ed.2d 889, 901 (1968) and *J.M.A. v. State*, 542 P.2d 170 (Alaska 1975)). There is, however, a third and more important objective of the rule: to protect an individual's personal, constitutional rights. *State v. Bonds*, 98 Wash.2d 1, 653 P.2d 1024, 1031 (1982), *cert. denied*, 464 U.S. 831, 104 S.Ct. 111, 78 L.Ed.2d 112 (1983); *State v. White*, 97 Wash.2d 92, 640 P.2d 1061, 1071 (1982). This is implicit in many of our past decisions.

**26.** In fairness to these entities, it must be conceded that the importance of the *Mallott* rule may not have been altogether clear; in none of our past three decisions did we expressly state that recording is a requirement of state due process.

**27.** Other potential deterrents include criminal sanctions, police departmental proceedings, civil rights actions and common law tort suits against the offending officer. *Sundberg*, 611 P.2d at 51–52 (footnotes omitted).

the *Mallott* rule, we are confident that law enforcement agencies will establish effective procedures to implement the rule and provide adequate training for their personnel. Suppression of statements taken in violation of the rule will, therefore, deter continued disregard of its requirements by officers, agencies and courts.

Another purpose is also served by the rule that we now adopt. The integrity of our judicial system is subject to question whenever a court rules on the admissibility of a questionable confession, based solely upon the court's acceptance of the testimony of an interested party, whether it be the interrogating officer or the defendant. This is especially true when objective evidence of the circumstances surrounding the confession could have been preserved by the mere flip of a switch. Routine and systematic recording of custodial interrogations will provide such evidence, and avoid any suggestion that the court is biased in favor of either party.[28]

Most importantly, an exclusionary rule furthers the protection of individual constitutional rights.[29] Strong protection is needed to insure that a suspect's right to counsel, his privilege against self incrimination, and due process guarantees are protected. A confession is generally such conclusive evidence of guilt that a rule of

exclusion is justified, when the state, without excuse, fails to preserve evidence of the interchange leading up to the formal statement. This is particularly true when, as in these cases, the defendant may have been deprived of potentially favorable evidence simply because a police officer, in his own discretion, chose to turn the recorder on twenty minutes into the interview rather than at the beginning.[30] Exclusion is warranted under these circumstances because the arbitrary failure to preserve the entire conversation directly affects a defendant's ability to present his defense at trial or at a suppression hearing.[31] Moreover, exclusion of the defendant's statement is the only remedy which will correct the wrong that has been done and "place the defendant in the same position he or she would have been in had the evidence been preserved and turned over in time for use at trial." *Harris*, 678 P.2d at 413–14 (Singleton, J., concurring and dissenting).

Thus, we conclude that exclusion is the appropriate remedy for an unexcused failure to electronically record an interrogation, when such recording is feasible. A general exclusionary rule is the only remedy that provides crystal clarity to law enforcement agencies, preserves judicial integrity, and adequately protects a suspect's constitutional rights.[32] The necessity for

---

**28.** *See supra* note 6.

**29.** *See supra* note 26.

**30.** This is in direct conflict with our command in *Catlett. See supra* note 11.

**31.** *See Copelin v. State,* 659 P.2d 1206 (Alaska 1983) (exclusionary rule applied where denial of right to consult attorney prior to breathalyzer test affected defendant's ability to present his defense).

**32.** Along with other appellate courts we have imposed an exclusionary rule where police have failed to preserve other kinds of evidence. *See Municipality of Anchorage v. Serrano,* 649 P.2d 256 (Alaska App.1982) (results of breathalyzer test suppressed where state failed to preserve breath samples); *Lauderdale v. State,* 548 P.2d 376 (Alaska 1976) (results of breathalyzer test suppressed where state failed to preserve ampoules used in test); *Garcia v. District Court,* 197 Colo. 38, 589 P.2d 924 (1979) (where state

failed to preserve breath samples, evidence relating to breath tests and any derivative evidence was suppressed); *State v. Lovato,* 94 N.M. 780, 617 P.2d 169 (App.1980) (state's failure to preserve blood alcohol kit rendered testimony regarding results of test run with kit inadmissible). Suppression of evidence has also been the remedy for violations of other constitutional rights under *state* constitutional standards. *See State v. Glass,* 583 P.2d 872 (Alaska 1978), *modified by City and Borough of Juneau v. Quinto,* 684 P.2d 127 (Alaska 1984) (warrantless recording between defendant and informer inadmissible because it violated Alaska Constitution); *Zehrung v. State,* 569 P.2d 189 (Alaska 1977), *opinion on rehearing,* 573 P.2d 858 (Alaska 1978) (warrantless search not justified as search incident to arrest under Alaska Constitution; thus, evidence obtained was suppressed); *State v. Johnson,* 232 Or. 118, 374 P.2d 481 (1962) (court stated in dicta that evidence seized in violation of state and federal constitutions may not be used in criminal prosecutions); *State v. White,* 97 Wash.2d 92, 640 P.2d 1061 (1982)

this strong remedy remains, even when we consider society's interests in crime prevention and the apprehension of criminal offenders. Exclusion of reliable, yet unrecorded, statements will not occur frequently when compliance is widespread.[33]

## V. EXCEPTIONS

 Despite what we have said thus far, we recognize that nearly every rule must have its exceptions, and that exclusion of a defendant's statements in certain instances would be wholly unreasonable. A violation of the *Mallott* rule does not, therefore, require exclusion of the defendant's statements in all cases. Thus, the holding in this case does not bar the admission of statements obtained *before* a violation of the recording rule occurs. Where recording ceases for some impermissible reason, properly recorded statements made prior to the time recording stops may be admitted, even when the failure to record the balance of the interrogation is unexcused, since such prior statements could not be tainted by anything that occurred thereafter. Also, failure to record part of an interrogation does not bar the introduction of a defendant's recorded statements, *if the unrecorded portion of the interrogation is, by all accounts, innocuous.* In such cases, there is no reason to exclude the defendant's recorded statements, because no claim of material misconduct will be presented. *See* Rule 47(a), Alaska R.Crim.P. (errors which do not affect substantial rights shall be disregarded). For the same reason, a defendant's unrecorded statement may be admitted if no testimony is presented that the statement is inaccurate or was obtained improperly, apart from violation of the *Mallott* rule.

REVERSED and REMANDED for further proceedings, with orders that Harris' and Stephan's statements be suppressed.

(evidence obtained as a result of stop made pursuant to statute declared unconstitutional under Washington Constitution was subject to suppression).

**33.** *Caveat:* We recognize that many custodial interrogations must take place in the field, where recording may not be feasible. Because of this, the rule that we announce today has limited application; it applies only to *custodial*

interrogations conducted in a place of detention, such as a police station or jail, where it is reasonable to assume that recording equipment is available, or can be made available with little effort. In a future case, however, we may be persuaded to extend the application of this rule, *particularly if it appears that law enforcement officials are engaging in bad faith efforts to circumvent the recording requirement set forth in this opinion.*