Patrick **SUITER,** Appellant,

v.

**STATE of Alaska,** Appellee.

No. A–2739.

Court of Appeals of Alaska.

Dec. 15, 1989.

---

Steven P. Gray, Kodiak, for appellant.

R. Bruce Roberts, Asst. Dist. Atty., Nathan A. Callahan, Dist. Atty., Kodiak, and Douglas B. Baily, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

OPINION

COATS, Judge.

On April 2, 1988, Patrick Suiter was involved in a multi-vehicle accident on the highway outside of the City of Kodiak. The state troopers who arrived at the scene of the accident encountered Suiter and concluded that he was under the influence of alcohol. Trooper Martin, who arrested Suiter for driving while intoxicated, transported him to the police station. At the police station, Martin asked Suiter to take the

Intoximeter test. When Suiter did not respond to this request, Martin began to read the implied consent form which explained Suiter's obligation to take the Intoximeter test under the law. Suiter was yelling as the trooper read the implied consent form. When Martin was reading paragraph 6 of the implied consent form Suiter grabbed the form, put into his mouth, chewed it up, and then spit it out. Martin did not finish reading the form and did not again ask Suiter to submit to the Intoximeter test. Suiter was then taken to jail.

A jury convicted Suiter of driving while intoxicated and refusal to submit to a chemical test of his breath. Suiter now appeals his convictions to this court. We affirm Suiter's conviction for driving while intoxicated. We reverse his conviction for refusal to submit to a chemical test.

 Suiter argues that the evidence was insufficient to convict him of refusing to submit to a chemical breath test because Martin did not ask him to take the test after the trooper read the implied consent form. AS 28.35.032(a) provides:

> If a person under arrest refuses the request of a law enforcement officer to submit to a chemical test under AS 28.-35.031(a), *after being advised by the officer* that the refusal will, if that person was arrested while operating or driving a motor vehicle for which a driver's license is required, result in the denial or revocation of the license or nonresident privilege to drive, that the refusal may be used against the person in a civil or criminal action or proceeding arising out of an a act alleged to have been committed by the person while operating or driving a motor vehicle or operating an aircraft or a watercraft while intoxicated, and that the refusal is a misdemeanor, a chemical test may not be given, except as provided by AS 28.35.035. (Emphasis supplied.)

Suiter does not contend that because Martin did not complete reading the implied consent form he had not been properly informed of his rights prior to refusing the breath test. *See Svedlund v. Anchorage,* 671 P.2d 378, 385 (Alaska App.1983) (dis-

cussing the *mens rea* for conviction of refusal to submit to a breath test). Rather, Suiter contends that the officer was required to ask him whether he would take the Intoximeter examination *after* he was told of the purpose of the test and the consequences of refusing the test. We agree with Suiter that the evidence in this case is insufficient to establish that he refused to submit to a chemical test of his breath after he was told of the consequences of refusing the test.

Alaska Statute 28.35.032(a) specifically provides that the refusal to take the chemical test must occur after the person under arrest for driving while intoxicated has been informed of the consequences of refusal. One of the clear principles of statutory construction is that ambiguities in penal statutes must be narrowly read and strictly construed against the government. *Kinnish v. State,* 777 P.2d 1179, 1181 (Alaska App.1989), 3 C. Sands, *Sutherland Statutory Construction,* § 59.03, at 11 (4th ed. 1986). Under the statute, the state was required to establish that Suiter refused to take the test after he had been informed of the consequences. It was certainly reasonable for Martin to assume that, had he asked Suiter to take the test after reading him the implied consent form, Suiter would have refused to take the test. Furthermore, we are reluctant to have Suiter benefit from his disruptive behavior. However, the offense of refusing to take a breath test is a crime which takes place under police supervision in the police station. In *Svedlund* we stated:

> The police have no interest in promoting crime. Since the penalties for drunk driving are identical to the penalties for refusing a test, a person refusing must be motivated by either incompetence, ignorance or stubborness. Adequate warnings serve to insure that a refusal will not be based on ignorance and that the obvious legislative goal of encouraging those accused of drunk driving to take the test will be served.

671 P.2d at 385 n. 9.

We conclude that it was not proper under the statute to infer from Suiter's actions

that he was refusing to take the breath test. We believe that the state had the duty to establish that Suiter clearly refused to take the breath test. Since the record does not establish that Suiter was given a clear opportunity to take the test after Martin had warned him of his duty to take the test, we conclude that the evidence is insufficient to establish that Suiter committed the offense of refusing to take the breath test. We accordingly conclude that Suiter's motion for judgment of acquittal should have been granted.

■ Suiter next argues that the trial court erred in refusing to suppress any testimony about statements which he made while he was in custody at the police station and in refusing to suppress any testimony regarding his conduct at the station. He argues that the state's failure to videotape the booking procedures rendered any other other evidence concerning the booking procedures inadmissible. Suiter cites *Stephan v. State*, 711 P.2d 1156 (Alaska 1985), where the supreme court held that, where feasible, the police must record custodial interrogations which they conduct in a place of detention. Suiter argues that *Stephan* should be extended to require the police to record the circumstances surrounding a refusal to take a breath test. Because we have already concluded that the evidence was insufficient to convict Suiter of this charge, it is unnecessary for us to consider those arguments.

We assume that Suiter is also arguing that the police were required to videotape the booking process to preserve evidence of Suiter's state of intoxication at that time. We conclude that *Stephan* should not be extended to apply to the circumstances in this case. First, testimony presented in the trial court established that the failure to videotape the booking process was inadvertent rather than intentional. Martin testified that he discovered that the booking procedure had not been videotaped several days later, apparently either because of a mechanical failure or a failure by the dispatch office to activate the recorder. Second, Suiter has not indicated in any concrete way how the evidence might have

aided him. We accordingly conclude that the trial court did not err in denying Suiter's motion to suppress.

■ Suiter also argues that the trial court erred in failing to suppress Trooper Bennett's testimony because Bennett had allegedly violated Criminal Rule 16 by failing to provide the defense with information from notes which he made at the accident scene. The trial court reviewed the notes and concluded that the notes related to another collision that occurred near the same time and place as the collision in which Suiter was involved but that Suiter was not directly involved in the other collision. The court decided that there was enough information in the police report to put the defense on notice that there were other possible witnesses. We have reviewed Bennett's notes and conclude that the trial court did not abuse its discretion in finding that there had not been a violation of Criminal Rule 16. We also note that the normal remedy for a discovery violation is to grant a continuance rather than suppressing evidence. *State v. Lewis*, 632 P.2d 547, 549 (Alaska App.1981). We accordingly find no error.

■ Suiter next challenges the trial court's restriction of his cross-examination of Bennett. On cross-examination, defense counsel asked Bennett whether Bennett had supplied the defense with copies of his notes before trial. The trial court sustained the prosecution's objection to this question. On appeal Suiter argues that he should have been able to cross-examine Bennett regarding his notes so that the jury would know that there were some possible witnesses whom Suiter had not had the opportunity to contact. However, all the trial court did was prevent Suiter from establishing that Bennett had not supplied Suiter with copies of his notes before trial. The ruling did not prevent Suiter from establishing that other witnesses were present at the accident scene. The trial court could properly conclude that it would be unproductive for the jury to hear evidence whether the state should have provided the defense with Bennett's notes at an earlier time. Suiter never made an

offer of proof which indicated how the fact that Bennett had not provided his notes to defense counsel at an earlier time was relevant to Suiter's defense. We find no abuse of discretion.

■ Suiter also contends that the trial court erred in failing to suppress a tape recording which the troopers made when Suiter was arrested and while he was transported to the police station. Apparently Suiter was not notified of the existence of the tape until approximately four days before trial began. The trial court found that the state had not willfully violated Criminal Rule 16 and denied Suiter's motion to suppress the tape. The court offered to grant the defense a continuance in order to review the tape; defense counsel did not respond to the court's offer. As we have already noted, the proper remedy for a discovery violation, unless the defense will suffer substantial prejudice, is to grant a continuance to allow defense counsel adequate time to prepare to meet the new evidence. *Lewis,* 632 P.2d at 549. Suiter did not demonstrate any substantial prejudice. We accordingly affirm the trial court's decision refusing to suppress the tape recording.

■ Suiter next argues that the trial court erred in admitting the audio tape recording because the tape was of poor quality. The tape contains a good deal of static and background noise, which at times render the voices on the tape inaudible. At other times, however, the listener can hear the voices of Bennett, Martin, and Suiter fairly clearly. During these portions of the tape, Suiter's speech does not sound slurred, although his speech pattern is somewhat loose. Suiter uses profanity, complains about his handcuffs, and otherwise challenges the troopers in a sarcastic manner.

Suiter contends that it was error to admit the tape because the jurors might conclude from the poor sound quality that Suiter's speech was slurred or garbled. The trial court concluded that the poor quality of the tape was not prejudicial to Suiter. A.R.E. 403. The trial court found that the portions of the tape that were audible demonstrated that Suiter's speech was understandable and concluded that the inaudible portions of the tape were not misleading. Before the court played the tape for the jury, the court instructed the jurors that "the tape is somewhat inaudible in various places, and you are to draw no conclusions from that. It's just—some of the information did not get very well picked up."

The court may admit into evidence partially audible tape recordings if the probative value of the evidence outweighs the potential for unfair prejudice and if the inaudible portions of the tape are not so substantial that the recording is unreliable. *Gallagher v. State,* 651 P.2d 1185, 1189–90 (Alaska App.1982). We conclude that the trial court did not abuse its discretion in admitting the tape. From our review of the record, we conclude that the jury could tell when the voices on the tape were obscured by background noise and static and that the jury would not conclude that the background noise and static were evidence that Suiter was intoxicated. The recording's shortcomings certainly reduce its probative value, but these shortcomings do not appear to increase its potential for unfair prejudice. We find no error.

■ Suiter finally argues that Magistrate Moran erred in refusing to grant his motion for a mistrial. This motion pertained to the prosecutor's reference to the trooper's implied consent warning form as though it had been admitted into evidence when it had not been. Since we have concluded that Suiter must be acquitted of the charge of refusal to take a breath test, and the prosecutor's erroneous comments only pertain to that charge, any error in denying Suiter's mistrial motion would be harmless. We conclude that the prosecutor's statements would not have appreciably affected the jury's verdict on the driving while intoxicated charge. *Love v. State,* 457 P.2d 622, 631 (Alaska 1969).

The conviction for driving while intoxicated is AFFIRMED. The conviction for refusal to take a breath test is REVERSED.

BRYNER, C.J., concurring.

BRYNER, Chief Judge, concurring.

Although I join in the court's opinion, I believe it necessary to emphasize the limited scope of our holding concerning Suiter's refusal to take the Intoximeter test.

Police officers dealing with individuals who have been arrested for DWI can only be expected to act within the realm of the possible. When, as in this case, a defendant's actions prevent the police, despite good faith efforts, from completing the implied consent warnings, substantial compliance with the requirement to give the warnings may be found. Because Suiter's actions precluded a complete reading of the implied consent warnings, the police were excused from further attempts to apprise Suiter of the consequences of refusing to take a breath test; Suiter would be estopped from asserting his lack of knowledge of the consequences as a defense.

Nevertheless, the fact that the police substantially complied with the requirement of giving Suiter notice of the consequences of a refusal does not resolve the problem. The refusal statute requires that the defendant be given an opportunity to take a breath test after the implied consent warnings have been read. The statutory language thus mandates that an express request to take the test be made following the implied consent warnings.

In the present case, although Suiter's behavior precluded a complete reading of the implied consent warnings, there is nothing to suggest that, after being thwarted in their efforts to read the warnings, the police could not have specifically requested Suiter to take the test. To comply with the statutory requirements, the police need only have asked Suiter, once again, to submit to an Intoximeter test. A subsequent refusal—whether by word or conduct—would have been grounds for prosecution and conviction.

Admittedly, in the context of the present case, it might appear unduly formalistic to insist that an express request to submit to a breath test was necessary. Given Suiter's initial refusal to take the test and his conduct when the police attempted to read the implied consent warnings, an additional request would likely have been futile; Suiter would inevitably have refused.

Nevertheless, a defendant may properly be convicted of a crime only after it has been committed. The crime of refusing to take a breath test is a unique statutory creation. The crime occurs when the defendant refuses a request to take the test; that request must be made after the implied consent warning is given.

To excuse compliance with the requirement of a specific request on grounds that an uncooperative defendant has already refused once and would likely refuse again would in effect allow the defendant to be convicted on the assumption that he would inevitably have committed the crime had he been given the opportunity to do so.