**Robert C. SWANSON, Appellant,**

v.

**CITY & BOROUGH OF JUNEAU, Appellee.**

**No. A–2817.**

Court of Appeals of Alaska.

Dec. 29, 1989.

Peter M. Page, Juneau, for appellant.

John A. Leque, City and Borough of Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

COATS, Judge.

Robert C. Swanson was arrested on July 15, 1988, for driving while intoxicated in violation of Code, City and Borough of

Juneau § 72.10.010. He submitted to an Intoximeter test which showed a blood alcohol level of .198. Swanson moved to dismiss the charge on the grounds that the Juneau police failed to make a videotape of him at the police station, and that rather than retaining a sample of his breath for retesting, the police had offered him the opportunity to take an independent blood test. District Court Judge Linn Asper denied the motion on both grounds. Swanson subsequently entered a plea of no contest, reserving his right to appeal the district court's denial of his motion to dismiss. *See Cooksey v. State*, 524 P.2d 1251 (Alaska 1974). We affirm.

On June 1, 1987, the Juneau Police Department instituted a new procedure to meet the requirement that it provide suspected intoxicated drivers with a means of independently verifying the results of the Intoximeter test. The department discontinued its previous policy of retaining a sample of the arrestee's breath for possible retesting. Instead, the department now offers everyone who has taken an Intoximeter test the opportunity to have blood drawn and stored at department expense for a possible future blood test.

■ In *Anchorage v. Serrano*, 649 P.2d 256, 258 (Alaska App.1982) (footnote omitted), we held that "the due process clause of the Alaska Constitution requires the prosecution to make reasonable efforts to preserve a breath sample or to take other steps to allow a defendant to verify the results of the breathalyzer test." Swanson argues that the Juneau Police Department policy of offering the opportunity for an independent blood test does not satisfy the requirement set forth in *Serrano*.[1] This argument is foreclosed by our decision in *Gundersen v. Anchorage*, 762 P.2d 104 (Alaska App.1988), *aff'd on rehearing*, 769 P.2d 436 (Alaska App.1989), *petition for hearing granted*, No. S–3219 (Alaska, May 1, 1989). In *Gundersen*, we held that the

constitutional right recognized in *Serrano* was satisfied by an offer of assistance in obtaining an independent blood test. *Id.* 762 P.2d at 112. The Anchorage Police Department policy and the notice of the right to an independent test that were at issue in *Gundersen* are almost identical to those at issue in this case.

Swanson argues that the Juneau Police Department adopted this new policy in bad faith, relying upon people's aversion to having blood drawn. However, we held in *Gundersen* that the drawing of blood is not so intrusive as to be a *per se* unreasonable alternative to the retention of breath samples. *Id.* We note that the police department bulletin instituting the new policy stated that the policy had been adopted to alleviate problems with breath sample retention which had compromised criminal prosecutions and administrative license revocation proceedings. We have previously recognized problems with the reliability of breath sample retention as a means of verifying breath test results. *See generally State v. Kerr*, 712 P.2d 400 (Alaska App. 1985); *Best v. Anchorage*, 712 P.2d 892 (Alaska App.1985). It is undisputed that the testing of a blood sample is a reliable means of verifying the subject's blood alcohol level. We find that the police did not act arbitrarily or unreasonably in substituting the offer of a blood test for the previous policy of retaining breath samples.

■ Swanson also challenges the Juneau Police Department's discontinuation of its policy of videotaping the booking of DWI suspects, including the performance of field sobriety tests. The department discontinued the videotaping as of March 1, 1988. Bookings of DWI suspects in Juneau are now recorded on audio tape rather than videotape. Swanson argues that without a videotape, a defendant in a DWI case cannot effectively cross-examine the arresting officer regarding the defendant's physical appearance at the time of the arrest and

---

1. Swanson makes no arguments that are specific to the facts of his case. He does not contend that he was misled by the notice he was given of

his right to an independent test, or that the police in any way interfered with his attempts

his performance in field sobriety tests.[2]

Swanson argues that he was denied his due process right to a fair trial when the police failed to videotape him at the police station. Here again he cites *Serrano*, in which we held that the failure of the prosecution to make reasonable efforts to preserve a breath sample in cases in which they wish to admit the results of a breath test violates the due process clause. Our decision in *Serrano* was based on the rule of *Lauderdale v. State*, 548 P.2d 376 (Alaska 1976). *Serrano*, 649 P.2d at 258–59. In *Lauderdale*, the supreme court held that the state's failure to preserve the ampoule used in a breathalyzer test constituted a denial of the right to "cross-examine" the test results, and thus a denial of the right to a fair trial. 548 P.2d at 381 (footnote omitted).

Swanson contends that the availability of a videotape for use in cross-examining the arresting officer regarding his observations of Swanson's physical appearance and coordination is as important to his defense against the charge of DWI as is an ampoule or breath sample for use in "cross-examining" the results of a breathalyzer test. We reject this argument.

The court in *Lauderdale*, recognizing the importance of breathalyzer test results in DWI prosecutions, called the breathalyzer ampoule the "critical 'witness' ... which established the presumption of Lauderdale's guilt...." 548 P.2d at 382 n. 11. The court held that the opportunity to test the reliability of breathalyzer results by examining the ampoule was "closely analogous, if not equivalent, to the case where defense counsel, by cross-examination, tests the credibility of a witness who testifies against the accused." *Id.* at 381. The court distinguished the ampoule, as "critical witness," from a police officer's notes, which are not essential to the cross-examination of the officer. *Id.* at 382 n. 11.

The analogy of DWI videotapes to breathalyzer ampoules was expressly rejected by the supreme court in *Thorne v. Department of Public Safety*, 774 P.2d 1326 (Alaska 1989). Thorne appealed from an administrative order revoking his driver's license for driving with a blood alcohol level of .10 percent or greater. After Thorne had pled no contest to the criminal charge of negligent driving, but before the civil license revocation hearing, the police had erased and recycled a videotape that had been made of Thorne performing field sobriety tests shortly after his arrest. *Id.* at 1328. After noting that the same procedural safeguards apply in civil license revocations for DWI as in criminal prosecutions, the supreme court held that "Thorne's due process rights at the revocation hearing were violated by the state's failure to preserve the videotape." *Id.* at 1330. The decision was based on the rule that the state must preserve and make available to a criminal defendant material evidence gathered in a criminal investigation which may prove favorable to the defendant. *Id.*[3] The court went on to reject Thorne's alternative ground for appeal: the contention that the state's failure to preserve the videotape violated his right to confront and cross-examine the witnesses against him. The court recognized the right to confront and cross-examine witnesses as a due process right enjoyed by civil defendants such as Thorne, but declined to extend the rule of *Lauderdale* to DWI videotapes. The court stated:

> In the present case ... Thorne's right to confront and cross-examine witnesses was not violated. Officer Fritz was present at the hearing and was subjected to vigorous cross-examination by Thorne's attorney. Thorne attempts to analogize the present situation to the failure to preserve a breathalyzer test ampoule while introducing the test results. This was held a denial of due

to obtain independent verification of his Intoximeter result.

**2.** Since Swanson was charged only with DWI, we do not address the issue of videotaping an alleged refusal to submit to a chemical test of

blood alcohol level in cases in which charges arise out of that refusal.

**3.** That rule does not apply in the present case because there was no destruction of evidence here; no videotape of Swanson was ever made.

process in *Lauderdale*, 548 P.2d at 381, since it denied the accused the right to " 'cross-examine' the results of the test." The problem with Thorne's analogy is that in a drunk driving criminal prosecution the breathalyzer test results are introduced as proof of a critical element of the crime. Here, the contents of the videotape would be introduced to corroborate Thorne's version that he satisfactorily performed the field sobriety tests.... The videotape was not a witness against Thorne. Thorne's inability to cross-examine Officer Fritz by use of the videotape did not violate his rights under the Due Process Clause or Article 1, section 11 of the Alaska Constitution.

*Id.* at 1332–33 (footnote omitted).

Swanson's right to confront and cross-examine witnesses against him was not violated by the city's failure to videotape his sobriety tests. Had Swanson's case proceeded to trial, any testimony by the arresting officer regarding Swanson's physical appearance and his performance in the sobriety tests, like any other first-hand testimony based on a witness' observations, would have been subject to traditional question-and-answer cross-examination. No "critical witness" would have been immune from cross-examination, as was the case with the breathalyzer results in *Lauderdale*.

■ Swanson also urges us to extend the rule of *Stephan v. State*, 711 P.2d 1156 (Alaska 1985), to the videotaping of sobriety tests. In *Stephan*, the supreme court held that any custodial interrogation of a suspect conducted in a place of detention must be recorded. Swanson argues that the policies behind the *Stephan* rule apply equally to videotaping of DWI suspects.[4]

The supreme court's ruling in *Stephan* was grounded on the court's conviction that recording of custodial interrogations is "a reasonable and necessary safeguard, essential to the adequate protection of the accused's right to counsel, his right against self-incrimination and, ultimately, his right to a fair trial." *Id.* at 1159–60. These fundamental rights are not implicated in the failure to videotape the performance of sobriety tests. While it is true that there is the possibility of dispute regarding the facts of any encounter between a police officer and a suspect, we are not prepared to order the videotaping of all such encounters. We are aware of no other state whose courts require the videotaping of the performance of field sobriety tests.[5] The audio taping policy of the Juneau Police Department, designed to save time, space and money, is neither arbitrary nor unreasonable, and it did not violate Swanson's rights.

The conviction is AFFIRMED.

4. Any custodial interrogation which might occur during the processing of DWI suspects would of course come within the *Stephan* rule. However, the *Stephan* requirement is satisfied by the Juneau Police Department policy of recording DWI bookings on *audio* tape, which was specifically approved as a method of recording by the court in *Stephan*, 711 P.2d at 1159 n. 11.

5. In the state of Texas, all counties with a population of 25,000 or more are required by statute to videotape persons arrested for DWI. Tex. Rev.Civ.Stat. Ann. art. 67011–1, sec. 24 (Vernon Supp.1989); Texas Penal Code § 19.05. Even in Texas, however, the remedy for the state's failure to videotape is not dismissal of the case or suppression of any evidence. If a county covered by the statute fails to videotape a DWI defendant, the defendant's remedy is that he is allowed to inform the jury of the failure to tape. *See, e.g., State v. Fox,* 772 S.W.2d 455, 456 (Tex. App.—Beaumont 1989); *Green v. State,* 745 S.W.2d 477, 478 (Tex.App.—Corpus Christi 1988); *Weaver v. State,* 700 S.W.2d 776, 777–78 (Tex.App. 2 Dist.1985).