Jonathan MOSES, Appellant,

v.

STATE of Alaska, Appellee.

No. A–7708.

Court of Appeals of Alaska.

Oct. 5, 2001.

Rehearing Denied Oct. 25, 2001.

Robert John, Fairbanks, for Appellant.

Alicia D. Porter, Assistant District Attorney, Harry Davis, District Attorney, Fair-

banks, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

## OPINION

COATS, Chief Judge.

Following a jury trial, Jonathan Moses was convicted for driving while intoxicated (DWI) and refusing to submit to a chemical test (refusal).[1] On appeal, Moses contends that District Court Judge Jane F. Kauvar erred when she found that Moses was provided the right to make a telephone call prior to deciding whether to submit to a breath test, that an administrative decision at Moses's license revocation hearing did not collaterally estop the state from proving that Moses was provided the right to make a telephone call, that the state troopers were not required to videotape Moses's refusal to take the breath test, and that Moses validly waived his right to an independent chemical test. For the reasons below, we affirm Moses's convictions.

### Facts and Proceedings

On May 15, 1999, at approximately three in the morning, Alaska State Trooper Patrick S. Johnson stopped a vehicle that was repeatedly leaving its lane of travel and crossing the right fog line on Chena Hot Springs Road near Fairbanks. Johnson contacted the driver, Moses, to determine whether he was driving while intoxicated. Upon contact, Johnson smelled a strong odor of alcohol coming from Moses's breath and person, and saw that Moses had bloodshot, watery eyes, slurred speech, and a swaying stance.

Johnson had Moses perform some field sobriety tests. Moses failed the horizontal gaze nystagmus test, only partially completed the walk-and-turn and the one-leg-stand tests, and refused to do any other tests. Moses submitted to a portable breath test, and his breath alcohol content was .190 percent. Johnson also found alcohol in Moses's vehicle, and Moses admitted that he had consumed alcohol that evening.

After arresting Moses for DWI, Johnson allowed Moses to call his wife from the scene of the traffic stop. The call lasted approximately one minute. Johnson then transported Moses to the station for an Intoximeter test.

After they arrived at the station, Moses again asked to make a phone call. Johnson asked if Moses wanted to call his wife or a public defender, and Moses said that he wanted to call his wife. During this conversation, Johnson inquired whether Moses was going to have his wife call a public defender. While the transcript indicates that Moses's response is "indiscernible," the record as a whole shows that Moses indicated that he wanted to call his wife to discuss arranging bail. Moses gave no indication at the station that he wanted his wife to call an attorney.

When they returned to the Intoximeter, Johnson asked Moses if he wanted to call a public defender. Moses said no, and the DWI processing proceeded. When the Intoximeter 3000 was ready, Moses refused to provide a breath sample. The DWI processing at the station, including the refusal, was audiotaped but was not videotaped. After Moses refused, he was advised of his right to an independent chemical test. He signed the notice of this right, indicating that he did not want the independent test.

Subsequently, Moses moved to suppress the evidence. Among other things, Moses argued that Johnson, by not allowing him a second call to his wife while at the station, had violated AS 12.25.150(b) and *Zsupnik v. State*.[2] He also argued that a Division of Motor Vehicles (DMV) hearing officer's decision rescinding Moses's license revocation because of Johnson's failure to allow this call collaterally estopped the state from asserting that Johnson had complied with AS 12.25.150(b). Finally, Moses sought suppression on the grounds that the refusal was not videotaped, and that his waiver of the independent test was not valid.

Following an evidentiary hearing, Judge Kauvar found that Johnson had complied with AS 12.25.150(b) when he allowed Moses

---

1. AS 28.35.030(a)(1); AS 28.35.032, respectively.

2. 789 P.2d 357 (Alaska 1990).

to telephone Moses's wife while still in the field. Although Judge Kauvar ruled that a second call was not required upon Moses's arrival at the police station, she also found that Johnson had offered Moses the opportunity to contact an attorney at the station. Judge Kauvar also ruled that the state was not collaterally estopped by the decision at the license revocation hearing, that Moses's refusal did not have to be videotaped, and that Moses's waiver of the independent test was valid.

After a jury trial, Moses was convicted of DWI and refusal. This appeal follows.

*Did the police comply with AS 12.25.150(b) and Zsupnik?*

■ Moses first contends that Johnson violated AS 12.25.150(b)[3] and *Zsupnik* because he did not allow Moses to call his wife at the police station. Relying on *Wardlow v. State,*[4] Moses argues that AS 12.25.150(b) is not triggered until a DWI arrestee is transported to a police station for DWI processing, and that any prior contact cannot satisfy AS 12.25.150(b). Moses, however, misapplies our decision in *Wardlow.* While we concluded that "an arrestee's statutory right to 'immediate' communication with attorneys, relatives, and friends normally does not attach until the arrestee is brought to a place of detention,"[5] we did not hold that a communication—whether in person or by telephone—completed after an arrest but before arrival at a place of detention could not satisfy AS 12.25.150(b).

In this case, Moses was allowed to contact his wife immediately after his arrest, while still in the field. Moses was able to tell his wife that he had been stopped, the location of the stop, that he had been or was being arrested for DWI, that he was being transported to a police station, and that she would have to retrieve their vehicle. According to the testimony of Moses and his wife, Moses also was able to discuss a considerable number of details about the stop—Moses told his wife that he thought Johnson was tailgating, that Moses had moved to the right onto the shoulder of the road in an effort to have Johnson pass him, and that when Moses finally pulled onto an adjacent bike path, Johnson stopped behind him and then turned on his vehicle's emergency lights. Additionally, Johnson testified that he heard Moses and his wife discuss bail. And while Moses claims that the call lasted no more than one minute, Johnson said he allowed Moses as much time as he needed.

Although Moses also argues that the phone call was not completed because of a bad connection, the record does not support this argument. Moses relies on Johnson's testimony that he thought that Moses might have had a bad connection, or that Moses was having trouble with the phone. But Moses and his wife did not testify that there was a bad connection or that other technical problems had interfered with their conversation.

We find that the record supports Judge Kauvar's findings that Moses, after his arrest for DWI and prior to taking the breath test, had an opportunity to make a phone call to his wife. Accordingly, we conclude that there was no violation of AS 12.25.150(b) or *Zsupnik.*

■ In addition, Moses—by asserting that he wanted his wife to call an attorney—suggests there was a violation of *Copelin v. State.*[6] *Copelin* provides that when a DWI arrestee asks to consult a lawyer, "the arrestee [shall] be afforded the right to do so before being required to decide whether to submit to a breathalyzer test."[7] But *Copelin* premised this right on AS 12.25.150(b), and we have just held that Moses's call to his wife satisfied this statute. Moreover, as set out above, the record demonstrates that Moses wanted to make the second call to his wife to arrange bail, not to contact an attorney. Finally, even if Moses were entitled to

---

**3.** AS 12.25.150(b) provides in part: "Immediately after an arrest, a prisoner shall have the right to telephone or otherwise communicate with the prisoner's attorney and any relative or friend." *See also* Alaska Criminal Rule 5(b).

**4.** 2 P.3d 1238 (Alaska App.2000).

**5.** *Id.* at 1249–50.

**6.** 659 P.2d 1206 (Alaska 1983).

**7.** *Id.* at 1215.

an additional call to contact an attorney, he was given that opportunity while at the police station and declined it. Therefore, *Copelin* was not violated.

### Was the state collaterally estopped?

■ Moses next contends that the state was collaterally estopped from asserting that it had complied with AS 12.25.150(b) because Moses already had received a favorable decision on this issue from a DMV hearing officer. Although collateral estoppel applies in criminal proceedings,[8] it does not under the circumstances of this case.

The issue at Moses's DMV hearing was whether Moses's license should be revoked because he had refused to submit to a breath test. Moses challenged the revocation on the "grounds [that there was] no valid basis for stop and contact [and] no probable cause for [the] arrest." He did not, however, challenge the action on the ground that AS 12.25.150(b) had been violated. During the DMV hearing, while Moses was cross-examining Johnson, the hearing officer became aware that an audiotape had been made and that it established that Johnson had not allowed Moses to call his wife while he was at the station.

The hearing officer asked for a copy of the tape, and the hearing was continued. After the hearing officer had listened to the tape, the hearing reconvened. After the hearing restarted, the hearing officer said based on the tape that "[W]hat we do in this office is we rescind [the revocation action] if [police] don't allow [arrestees] to contact a family member and that's what I'm going to do." Because of the way the issue was raised, the hearing officer was never told that Johnson had allowed Moses to telephone his wife before Moses arrived at the station.

(We note that while the hearing officer rescinded the revocation action, she also ruled on and rejected the contentions that Moses had raised and had actually litigated: she found that there was a valid basis for the stop and contact and that probable cause for the arrest existed.)

■ The purpose of collateral estoppel is to preclude re-litigation of decided issues.[9] For collateral estoppel to apply, the issue to be precluded must (among other things) be identical to that decided in the first action.[10] We find that the issue before the hearing officer (whether Moses's license should be revoked because he refused to submit to a breath test) was not identical to the issue before Judge Kauvar (whether AS 12.25.150(b) had been violated).

■ Moreover, not only do the issues need to be identical, but our supreme court recently held, relying on the Restatement (Second) of Judgments,[11] that collateral estoppel does not apply unless the issue sought to be precluded is "actually litigated."[12] In *In re Adoption of A.F.M.*, the supreme court stated,

> Our cases have adopted this Restatement standard: "The doctrine of collateral estoppel 'bars relitigation, even in an action on a different claim, of all issues of fact or law that were actually litigated and necessarily decided in [a] prior proceeding.'" And in applying the standard, we have said that an issue is "actually litigated" when it "is properly raised by the pleadings or otherwise, is submitted for determination, and is determined."[13]

In *A.F.M.*, the court found that the issue sought to be precluded (whether a sexual assault had occurred) was not "actually litigated" in this sense.[14] The *A.F.M.* court held that while

---

**8.** *See State v. Williams,* 855 P.2d 1337, 1342 (Alaska App. 1993).

**9.** *See Snook v. Bowers,* 12 P.3d 771, 777 (Alaska 2000).

**10.** *See id.*

**11.** Restatement (Second) of Judgments § 27 (1982).

**12.** *In re Adoption of A.F.M.,* 15 P.3d 258, 268–69 (Alaska 2001).

**13.** *Id.* at 268 (citations omitted).

**14.** *See id.* at 269.

the issue undeniably cropped up in [the victim's testimony in a prior Washington action] and was decided by the commissioner, the parties never "properly raised" it, "by the pleadings or otherwise"; nor did they "submit[ ] [it] for determination." Because the issue was not "actually litigated," the Washington court's finding on sexual assault did not preclude ... litigating the issue in the Alaska adoption proceeding.[15]

Although the issue Moses sought to preclude in his criminal case "undeniably cropped up" during the testimony in the earlier proceeding, and formed the basis for the hearing officer's decision, Moses never "properly raised" the issue by "the pleadings or otherwise." In reality, the record shows that the DMV hearing officer rescinded the revocation not as a result of the issues that were litigated, but on policy grounds based on a misunderstanding of the facts. In short, the issue that Moses asserted was collaterally precluded was not actually litigated at the license revocation hearing.

Accordingly, we conclude that the state was not collaterally estopped from proving that AS 12.25.150(b) was satisfied.

*Are police required to videotape breath test refusals?*

■ Moses next contends, relying on *Suiter v. State*,[16] that police are required to videotape breath test refusals. He argues that videotapes are necessary for a fair trial in refusal cases. *Suiter*, however, does not support Moses's contention, nor have we held that police have a duty to videotape the DWI processing or the act of refusal.[17] Although we noted in *Swanson v. Juneau*[18] that we were not addressing whether refusals should be videotaped, we rejected Swanson's general claim that videotaping the entire DWI processing was required to ensure a fair trial.[19] We also ultimately held that the government's decision to audiotape rather than

to videotape the DWI processing was "neither arbitrary nor unreasonable, and it did not violate Swanson's rights."[20] In Moses's case, the DWI processing, including the refusal, was audiotaped.

Additionally, one of our reasons in *Suiter* for rejecting a claim similar to Moses's was that Suiter had not "indicated in any concrete way how [a videotape] might have aided him."[21] Moses has not explained "in any concrete way" how a videotape of his refusal, as opposed to the audiotape, would have aided him. Accordingly, we conclude that there was no error.

*Did Moses waive his right to an independent test?*

■ Lastly, Moses contends that Judge Kauvar erred when she found that Moses validly waived his right to an independent test. Moses argues that Judge Kauvar found that Moses did not understand this right, but wrongly concluded that Moses had the duty to call an attorney to clear up any misunderstanding. Although Judge Kauvar did indicate that Moses could have called an attorney to discuss the independent test, the record does not show that she accepted Moses's claim that he did not understand the test. Nor would the record support such a finding.

At the evidentiary hearing, Moses conceded that he was given notice of his right to an independent test; he also gave the reasons why he declined to get such a test. He testified that:

> I told [Trooper Johnson] that I didn't want to take that blood test.... I thought they [were] trying to get more evidence ... for them ... for their case[.] ... I didn't think [that the test] would have been in my favor. That's why I didn't take the blood test.... I didn't think it would have been evidence for me.

This testimony demonstrates that Moses had a sufficient understanding of the inde-

15.  *Id.*

16.  785 P.2d 28 (Alaska App.1989).

17.  *Cf. Swanson v. Juneau,* 784 P.2d 678, 681 (Alaska App.1989).

18.  784 P.2d 678.

19.  *See id.* at 680 n. 2, 681.

20.  *Id.* at 681.

21.  *Suiter,* 785 P.2d at 31.

pendent blood test; he knew that it was an opportunity to get evidence of his blood alcohol content. The reason he declined the independent blood test was that he did not want to give the troopers evidence of his intoxication (which was consistent with his earlier decision to refuse to submit to the required breath test). While Moses now claims that he would have asked for the test had he known that the test would have resulted in "evidence for [him]," or have been "in [his] favor," this does not support his argument that he lacked an understanding of the test.

In *Crim v. Anchorage*[22] we rejected a similar claim. We concluded that a waiver could be valid even though the arrested motorist might not be able to "assess[ ] the potential advantages and disadvantages of availing himself of the [test];"[23] in other words, a valid waiver did not require that Crim know whether the independent test results would be favorable or unfavorable. We concluded that it was sufficient that Crim was notified of the right, that the record showed that he was aware that he had been arrested for DWI, and that he generally understood that the purpose of the independent test was to obtain evidence of his blood alcohol content.

In Moses's case, he was notified of his right to the test, and he chose not to obtain an independent test because he "didn't think . . . it would have been in [his] favor" and because he "didn't think it would have been evidence for [him]." In short, Moses's argument, like Crim's, is not that he lacked an understanding of his right to the independent test, but that he did not know whether the test results would be favorable to him.

Moses's testimony shows that he was aware that he had been arrested for DWI and that he was informed of the right to an independent test. After refusing the mandatory breath test, Moses did not want to generate evidence that could be used against him. This shows that Moses made a knowing and intelligent waiver of his right to obtain an independent chemical test. Accordingly, we find no error.

*Conclusion*

The convictions are AFFIRMED.

---

**22.** 903 P.2d 586 (Alaska App.1995).

**23.** *Id.* at 588.