PD-1189-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 9/30/2015 7:04:30 PM
Accepted 10/2/2015 10:35:39 AM
ABEL ACOSTA
CLERK

**NO. PD-1189-15**

**IN THE COURT OF CRIMINAL APPEALS**

_____

**MAYRA FLORES**
*Petitioner*

V.

**THE STATE OF TEXAS**
*Respondent*

_____

**FROM THE COURT OF APPEALS FOR THE FIRST JUDICIAL DISTRICT COURT OF TEXAS AT HOUSTON**

_____

**PETITION FOR REVIEW**

_____

**ORAL ARGUMENT REQUESTED**

Ralphaell V. Wilkins
State Bar No. 21487600
Julia A. Maldonado
State Bar No. 24007591
4606 San Jacinto St.
Houston, Texas 77004
Tel: 713-660-9200; Fax: 713-660-0559
E-mail: rwilkins@jmaldonadolaw.com
E-mail: julia@jmaldonadolaw.com
ATTORNEYS FOR PETITIONER

FILED IN
COURT OF CRIMINAL APPEALS

October 2, 2015

ABEL ACOSTA, CLERK

i

## IDENTITY OF PARTIES AND COUNSEL

| | |
|---|---|
| Petitioner: | Mayra Flores<br>TDCJ#1921088<br>Texas Department of Criminal Justice<br>Crain Unit<br>1401 State School Rd.<br>Gatesville, TX 76599 |
| Trial Prosecutor(s): | Joshua Phanco, Esq.<br>State Bar No: 24070413<br>Donna Logan, Esq.<br>State Bar No: 24049073<br>1201 Franklin Street<br>Houston, Texas 77002<br>Tel: 713-755-5800 |
| Appeal Prosecutors: | Daniel McCrory, Esq.<br>State Bar No: 13489950<br>1201 Franklin Street<br>Houston, Texas 77002<br>Tel: 713-755-5800<br>E-mail: mccrory_daniel@dao.hctx.net |
| Counsel(s): | Ralphaell V. Wilkins, Esq.<br>State Bar No. 21487600<br>Julia A. Maldonado, Esq.<br>State Bar No. 24007591<br>4606 San Jacinto Street<br>Houston, Texas 77004<br>Tel: 713-660-9200; Fax: 713-660-0559<br>E-mail: rwilkins@jmaldonadolaw.com<br>E-mail: julia@jmaldonadolaw.com |
| Presiding Judge: | Hon., Maria T. Jackson<br>339th District Court<br>Harris County, TX<br>1201 Franklin, 14th Floor<br>Houston, Texas 77002 |

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL      ii

TABLE OF CONTENTS      iii

INDEX OF AUTHORITIES      v

STATEMENT REGARDING ORAL ARGUMENT      1

STATEMENT OF THE CASE      1

STATEMENT OF PROCEDURAL HISTORY      2

GROUNDS FOR REVIEW      4

ARGUMENT      6

     a.    The Court of Appeals has decided an important question of state law that has not been, but should be, settled by the Court of Criminal Appeals.      6

     b.    There are three requirements for the admission of an accused's statement.      6

     c.    The petitioner's statement should not have been admitted because the recording device was not capable of making an accurate recording.      7

     d.    The Court of Appeals did an apple to oranges comparison to conclude that the audio tape's overall reliability was not impacted by the cut-off.      9

     e.    The Court of Appeals emasculated the requirements of section three of art. 38.22 that an accused's custodial interrogation be recorded.      10

     f.    The Court of Appeals misapplied the Court of Criminal Appeals' decision in *Weatherred* by failing to account for

ample evidence that the trial court had before it made its ruling on the admissibility of Petitioner's custodial interrogation.     11

g.  The Court of Appeals misapplied *Weatherred* because the burden of proving that the audio recording met the statutory requirements was on the State and the State failed to carry this burden.     15

CONCLUSION     16

PRAYER     16

CERTIFICATE OF SERVICE     17

CERTIFICATE OF COMPLIANCE     18

APPENDIX TO PETITION FOR REVIEW     19

# INDEX OF AUTHORITIES

*Cases*

*Davidson v. State,* 25 S.W.3d 183,185-86 (Tex. Crim. App. 2000)      6

*Maldonado v. State,* 998 S.W.2d 239-244-46 (Tex. Crim. App. 1999)
(citing Crim. Proc. Art. 38.22, § 3)      7, 9

*Quinones v. State,* 592 S.W.2d 933, 942 (Tex. Crim. App. 1980),
*cert denied,* 449 U.S. 893 (1980)      7, 9

*Weatherred v. State,* 15 S.W.3d 540, 542 (Tex. Crim. App. 2000)      11, 14, 15

*Woods v. State,* 152 S.W.3d 105, 116-17 (Tex. Crim. App. 2004)      6

*Rules*

Tex. Code Crim. Pro. Ann. art. 38.22, §3 (Vernon 2014)      4, 6, 7

## STATEMENT REGARDING ORAL ARGUMENT

Petitioner believes oral argument would be helpful to the Court because the issues raised are issues of first impression and the public policy behind resolution of these issues could be better discussed in the context of oral argument, where the Court can ask questions and consider alternatives that counsel are prepared to discuss.

## STATEMENT OF THE CASE

| | |
|---|---|
| *Nature of The Case:* | Mayra Flores was charged with the criminal offense of murder. |
| *Trial Judge:* | Hon. Maria Jackson |
| *Trial Court's Disposition:* | Mayra Flores was convicted of murder and sentenced to twenty-five years in the Texas Dept. of Criminal Justice. |
| *Appeals Court Parties:* | Appellant: Mayra Flores<br>Appellee: State of Texas |
| *Appeals Court's Disposition:* | First Court of Appeals at Houston; opinion by Justice Laura Higley, joined by Chief Justice Radack and Justice Massengale. |
| *Appeals Court's Disposition:* | Affirmed. |

## STATEMENT OF PROCEDURAL HISTORY

*COA Opinion Date:*       July 30, 2015

*Mnt. for Rehearing:*     No motion for rehearing was filed after the Court of Appeals' July 30, 2015 opinion.

*Grounds for Review:*     *One:* The Court of Appeals erred in ruling that the audio recording of Mayra's custodial interrogation was admissible notwithstanding the fact that the recording device used was not capable of making an accurate recording.

*Two:* The Court of Appeals applied the wrong standard in holding that the recording equipment's failure to record twenty minutes of Mayra's custodial interrogation did not amount to an alteration that rendered the recording unreliable and untrustworthy.

*Three:* The Court of Appeals misapplied this Court's holding in *Weatherred* because the audio tape failed to meet the requirements of section three of art. 38.22 and the trial court knew that

2

before its ruling to allow the audio recording into evidence.

## GROUNDS FOR REVIEW

1. Section three of art. 38.22 of the Texas Code of Criminal Procedure establishes certain requirements for the admissibility of the recording of a custodial interrogation. One of the requirements is that "the recording device was capable of making an accurate recording…" *See* Tex. Code Crim. Proc. Ann. art. 38.22 (Vernon Supp. 2014). The trial court admitted the audio recording of Petitioner's custodial interrogation even though twenty minutes of the interrogation was unrecorded because of a malfunctioning recording device. The audio taped statement should not have been admitted because the unrecorded portion of the interrogation contained exculpatory evidence and, thus, the audio recording was not accurate. Because the lower courts refused to suppress the butchered audio recording, the conviction must be overturned.

2. In order for a recording of a custodial interrogation to be admitted into evidence, section three of art. 38.22 of the Texas Code of Criminal Procedure mandates that "…the recording is accurate and has not been altered." *See* Tex. Code Crim. Proc. Ann. art. 38.22 (Vernon Supp. 2014). The twenty minutes of unrecorded custodial interrogation affected the reliability and trustworthiness of the entirety of Petitioner's custodial interrogation. This is so because the twenty minutes of unrecorded interrogation contained exculpatory evidence. The recording was not accurate and should have been suppressed. The trial court's

4

error in admitting the butchered audio tape likely led to an improper conviction and must be overturned.

3. The court of appeals misapplied this Court's holding in *Weatherred* regarding what was before the trial court at the time of its ruling and, thus, subject to appellate review. The trial court had knowledge before its ruling on the admissibility of Petitioner's custodial interrogation that the recording device failed to record twenty minutes of the interrogation and that the unrecorded portion of the interview contained exculpatory evidence. Because the audio tape failed to meet the requirements of section three of art. 38.22 and the trial court knew that before its ruling to allow the audio recording into evidence, Petitioner was harmed and deserves a new trial.

# ARGUMENT

### a. The Court of Appeals has decided an important question of state law that has not been, but should be, settled by the Court of Criminal Appeals.

The Texas Code of Criminal Procedure provides specific rules for governing the oral statements of an accused. Tex. Code Crim. Pro. Ann. art. 38.22, §3 (Vernon 2014) provides in relevant part:

> (a) No oral or sign language statement of an accused made as a result of a custodial interrogation shall be admissible against the accused in a criminal proceeding unless:

> (3) the recording device was capable of making an accurate recording, the operator was competent, and the recording is accurate and has not been altered;

### b. There are three requirements for the admission of an accused's statement.

Article 38.22 is a "procedural evidentiary" rule that prescribes the various requirements that must be satisfied before a statement made by an accused as a result of custodial interrogation will be admitted against him/her at trial. *Davidson v. State,* 25 S.W.3d 183,185-86 (Tex. Crim. App. 2000). "Strict compliance with all portions of § 3(a) is required." *Woods v. State,* 152 S.W.3d 105, 116-17 (Tex. Crim. App. 2004).

Section three of art. 38.22 establishes certain requirements for the admissibility of the recording of a custodial interrogation. *See* Tex. Code Crim. Proc. Ann. art. 38.22 (Vernon Supp. 2014). Admissibility of the tape is governed

6

by the following three-part test: 1)"the recording device was capable of making an accurate recording; 2) the operator was competent, and 3) the recording is accurate and has not been altered." *Id.* art. 38.22, § 3(a)(3). However, in addressing the final prong of the test, this Court has confirmed that inadvertent anomalies that do not affect the overall reliability of the recording do not constitute the impermissible sort of alteration contemplated by section 3 of article 38.22. *See Maldonado v. State,* 998 S.W.2d 239-244-46 (Tex. Crim. App. 1999) (citing Crim. Proc. Art. 38.22, § 3; *Quinones v. State,* 592 S.W.2d 933, 942 (Tex. Crim. App. 1980), *cert denied,* 449 U.S. 893 (1980) (based on *Edwards* requirements, not just any alteration renders a tape per se inadmissible: "If the alteration is accidental and is sufficiently explained so that its presence does not affect the *reliability and trustworthiness* of the evidence, the recording can still be admitted").

c.   **The petitioner's statement should not have been admitted because the recording device was not capable of making an accurate recording.**

First, in our case, it was an abuse of the trial court's discretion to admit the statement because the recording device used in Petitioner's case was not capable of making an accurate recording. Proof that the recording device was not capable of making an accurate recording is evidenced by the recording device's failure to record a full twenty minutes of Petitioner's interrogation. (RR. V; p. 87; lines 10-12; RR. V; p. 89; lines 13-17). It stretches credulity to the maximum length to

accept as factual that a recording device that stops working for twenty minutes of an interrogation statement, and never resumes, is capable of making an accurate recording. The trial court abused its discretion in admitting the audio recording because the recording device was not capable of making an accurate recording as mandated by section 3 of article 38.22. The court of appeals compounded the error by not even addressing whether the recording device was capable of making an accurate recording. The court of appeals erroneously framed Petitioner's section 3, art. 38.22 objection as only being that "…the recording of the interrogation is not accurate." (Opinion, p. 4). In actuality, both Petitioner and the State pointed out to the trial court that the recording device was not capable of recording accurately. (RR. V, p. 87; lines 14-24; RR. V, p. 89; lines 13-17; RR. V, pp. 89-90; RR. V; p. 87; lines 10-12). In essence, Petitioner's complaint was not just that the recording itself was not accurate, but that the recording device was not capable of making an accurate recording. (Id.). Interestingly, the Court of Criminal Appeals has not addressed this particular situation before. On only two occasions this Court has opined on cases involving mishaps with the recording device during the custodial interrogation process. However, neither of the malfunctions in those cases was anywhere near the extent and to the degree as the malfunction in Petitioner's case. In both *Quinones* and *Maldonado,* this Court only addressed the admissibility of recorded statements under the last leg of art. 38.22's requirement that "the

8

recording is accurate and has not been altered." *Quinones,* 592 S.W.2d at 944; ("If the alteration is accidental and is sufficiently explained so that its presence does not affect the reliability and trustworthiness of the evidence, the recording can still be admitted."). *Maldonado,* 998 S.W.2d at 245. ("[T]he evidence supports the position that the tape was accurate and had not been impermissibly "altered" in the sense contemplated by Article 38.22 §3(a)(3)"). While Petitioner certainly believes that the audio recording was not accurate, she also raised objection to its admissibility because the recording device could not record accurately.

> **d.      The Court of Appeals did an apple to oranges comparison to conclude that the audio tape's overall reliability was not impacted by the cut-off.**

In an attempt to illustrate that the overall reliability of the audio recording in Petitioner's case was not affected by the recording device malfunctioning, the appellate court cited two cases in which the combined anomalies in the audio recordings of those cases amounted to a mere nineteen (19) seconds. (Opinion, pp. 5-6). In *Quinones,* "the tape had been altered by [a] **fifteen second tapeover."** *Id.* at 938. In *Maldonado,* the defendant complained of a **three-second and a one-second portion** of his statement that had been "over-recorded." *Id.* at 244. In essence, the appellate court compared the loss of twenty-minutes of Petitioner's interrogation with the nineteen (19) seconds of anomalies in the audio recordings in *Quinones* and *Maldonado.* It is true that anomalies of such short durations as

pointed out in those two cases certainly did not affect the overall reliability and trustworthiness of the tapes. However, it would be the height of insanity to conclude that the overall reliability of Petitioner's audio tape (with its twenty minutes of missing interrogation) is somehow comparable with the less than *twenty seconds* of anomalies found in *Quinones* and *Maldonado.* Without question, a failure to record twenty minutes of an interrogation affects the overall reliability of the recording. How could one know or trust what was discussed during that twenty minutes of unrecorded interrogation? This leaves one relying on the testimonies of law enforcement personnel and the accused. Such a scenario defeats the purpose of having custodial interrogations recorded in the first place.[1]

e.    **The Court of Appeals emasculated the requirements of section three of art. 38.22 that an accused's custodial interrogation be recorded.**

In a shocking departure from the strict requirements of art. 38.22, the court of appeals relied on the testimony of the police detective to support its position that the trial court was correct to admit the audio recording. (Opinion p. 7). The appellate court said: "Officer Kuhlman testified that the recording "fairly and

---

[1] *See* Stephan v. State, 711 P.2d 1156, 1161 (Alaska 1985) (holding recording interrogations protects defendants' rights); State v. Scales, 518 N.W.2d 587, 592 (Minn. 1994) (acknowledging recording as essential to protect defendants' constitutional rights (quoting *Stephan v. State*, 711 P.2d 1156, 1159-60 (Alaska 1985))); *see also* Amy Klobuchar, *Eye on Interrogations: How Videotaping Serves the Cause of Justice*, WASH. POST, June 10, 2002, at A21 (arguing recording protects rights of criminal suspects). Recording custodial interrogations protects other interests besides those of the accused, such as "the public's interests in honest and effective law enforcement, and the individual interests of those police officers wrongfully accused of improper tactics. " Stephan v. State, 711 P.2d 1156, 1161 (Alaska 1985).

accurately depict[ed] the conversation that [he] had with the defendant on that day.""" (Opinion, p. 7). There is no dispute that the portion of Petitioner's interview that was recorded was done so in a manner that "fairly and accurately" depicted what Petitioner had said. That's not the problem. The problem is the twenty minutes of unrecorded interrogation that contained exculpatory evidence that the jury never got to hear. However, under the court of appeals' rationale, art. 38.22 would be totally eviscerated because there would not be a need to ever record the custodial interrogation if one could rely solely on the officer's rendition of the defendant's statement. Recording a suspect's entire interrogation provides substantial protection of the suspect's rights as well as the rights of police officers involved.

**f.** **The Court of Appeals misapplied the Court of Criminal Appeals' decision in *Weatherred* by failing to account for ample evidence that the trial court had before it made its ruling on the admissibility of Petitioner's custodial interrogation.**

The appellate court misapplied this Court's holding in *Weatherred v. State,* 15 S.W.3d 540, 542 (Tex. Crim. App. 2000). The court of appeals cited *Weatherred* for the proposition that an appellate court reviews a trial court's ruling on admissibility of evidence "in light of what was before the trial court at the time the ruling was made". (Opinion, p. 5). The appellate court then went on to say that "there was no evidence before the trial court at the time of the ruling that [Petitioner's] conversation continued for any length of time after the recording cut

11

off or that any statements were subsequently made that would call into question the accuracy of the nearly hour-long recorded conversation." (Opinion, p. 5). Having cited *Weatherred,* the court of appeals ignored a boat-load of evidence that was before the trial judge at the time it decided to allow the butchered audio recording into evidence. First, Petitioner's counsel made the following objection to the admissibility of the audio tape before the trial judge admitted the tape.

> **<u>Defense Counsel</u>**:
> So, we have a section or segment of her statement that the jury will not hear; because either advertent or inadvertent, it was destroyed or is missing. So what would happen is if you offer the statement, you would only be offering a part of her statement.

(RR. V. p.85; lines 3-8).

Secondly, Petitioner's counsel was joined by the prosecuting attorney in informing the trial court that the recorder stopped during the interrogation and that the police continued to question Petitioner for an extended period of time. The State's attorney was forced to concede told the trial judge the following facts before her ruling:

> **<u>Prosecutor</u>**:
> **At the end of the second statement,** if you will, if you want to say it's two different statements, although it's one, the video – or the audio shuts down and it cuts off, and that's the end. **And if you talk to the officer, the officer will tell you, I believe that we continued to speak more, but the video recording was so bad that we just didn't start back up.** So there is no part of the defendant's statement that exists that's not going to be played. **There is some statements that she made that were not recorded, therefore, not admissible.**

12

(RR. V, p. 87; lines 14-24).

Additionally, later on, the State's attorney went on to reemphasize exactly where the unrecorded portion of Petitioner's statement was located:

**Prosecutor:**
And the statutory warnings are repeated at the start of the second recording, if you will. **Now the second recording stops, as well; but they don't pick up from that point in time. They just leave it as it is.**

(RR. V, p. 89; lines 13-17).

**Prosecutor:**
The entire statement that is in the possession of the State is going to come into the trial. **And we are not going to ask any questions about anything that was said off the tape, only the things that were recorded.**

(RR. V, pp. 89-90).

Finally, the State even told the trial judge that the police questioned Petitioner for twenty minutes and none of that portion of her statement was recorded.

**Prosecutor:**
I'm not going to say, **what did she say in that twenty minutes before you found out that the tape was shut down?**

(RR. V; p. 87; lines 10-12).

Furthermore, Petitioner even warned the trial court that that the twenty-minutes of missing recording contained "exculpatory evidence". (RR. Vol. 5, p. 85). Petitioner also expressed her concerns that were the trial court to admit the butchered audio tape, it would create an impression that was "non-favorable to the

13

defendant." (RR. Vol 5, p. 85). In spite of Petitioner's objections, the trial court admitted the butchered audio tape and allowed the jury to hear it. (RR. Vol. 5, pp. 90-92, 97).

The appellate court misapplied *Weatherred* because the record shows that the trial court had plenty of evidence before its ruling that the recording device was not capable of making an accurate recording and that the twenty minutes of unrecorded interrogation contained exculpatory evidence. The appellate court's reliance on *Weatherred* was also misplaced because in *Weatherred* this Court judged the propriety of a trial court's ruling to exclude a party's expert testimony. 15 S.W.3d at 542. This Court first noted that the burden was on the proponent of scientific evidence to show by clear and convincing proof that the evidence is relevant and reliable to assist the jury in understanding other evidence. *Id.* The appellant had attempted to carry that "considerable burden" by simply offering the expert's testimony and nothing else. *Id.* The appellate had failed to offer any evidence that his proffered expert could name any of his own studies that he had allegedly conducted extensive research on, researchers, or writings in question. *Id.* In upholding the trial court's ruling excluding the expert's testimony this Court said:

> [G]iven what the trial court had before it at the time it rules, it could have reasonably concluded that appellant failed to carry his burden of showing that the proffered expert testimony was scientifically reliable.

14

*Id. at* 543.

**g.** **The Court of Appeals misapplied *Weatherred* because the burden of proving that the audio recording met the statutory requirements was on the State and the State failed to carry this burden.**

Here, the State had the burden of proving that the audio recording of Petitioner's custodial interrogation met the strict requirements of section three of art. 38.22. Petitioner pointed out to the trial court that the recording failed to meet the requirements under art. 38.22 and supported it with evidence before the trial court made its ruling. (RR. V, p. 87; lines 14-24; RR. V, p. 89; lines 13-17; RR. V, pp. 89-90; RR. V; p. 87; lines 10-12). The circumstances in *Weatherred* are simply not analogous to that in this case. At the time of its ruling on the admissibility of the evidence, the trial judge in *Weatherred* had virtually nothing before it that would show that the proffered expert testimony was scientifically reliable. *Id.* at 543. On the other hand, in our case, before making her ruling, the trial judge had indisputable evidence from the proponent of the custodial interrogation, the State, that the recording device failed to record twenty minutes of Petitioner's interview. This fact alone meant that the trial judge knew before her ruling that the recording device was incapable of making an accurate recording and that the recording was not accurate.

## CONCLUSION

The trial judge abused her discretion by admitting the audio tape recording since it was not accurate and not complete. The statement failed to conform to the strict requirements of art. 38.22 §3(a). The jury's verdict was adversely impacted by the error. The error also affected a substantial right of Petitioner.

## PRAYER

WHEREFORE, PRMISES CONSIDERED, Petitioner asks this Court to reverse the conviction and acquit her. In the event the Court finds that the trial court committed reversible error, Petitioner asks that this Court reverse her conviction and remand to the trial court for a new trial.

Respectfully submitted,

**THE WILKINS LAW FIRM, P. C.**
4606 San Jacinto St.
Houston, Texas 77004
Telephone: (713) 660-9200
Telecopier: (713) 550-0559
E-mail: rwilkins@jmaldonadolaw.com
E-mail: julia@jmaldonadolaw.com

By: */s/ Ralphaell V. Wilkins*
Ralphaell V. Wilkins
SBN: 21487600
Julia A. Maldonado
SBN: 24007591
**ATTORNEYS FOR PETITIONER**

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and foregoing document has been sent via electronic mail, certified return requested mail, this 30th day of September 2015, to the following counsel of record:

Daniel McCrory, Esq.
Joshua Phanco, Esq.
Donna Logan, Esq.
Harris County District Attorney's Office
1201 Franklin Street
Houston, Texas 77002

Hon., Maria T. Jackson
339th District Court
Harris County, TX
1201 Franklin, 14th Floor
Houston, Texas 77002

*/s/ Ralphaell V. Wilkins*
Ralphaell V. Wilkins

## CERTIFICATE OF COMPLIANCE

Pursuant to proposed Rule 9.4(i)(3), undersigned counsel certifies that this brief complies with the type-volume limitations of *Tex. R. App. Proc. 9.4(e)(i).*

1.  Exclusive of the portions exempted by *Tex. R. App. Proc. 9.4(e)(i),* this brief contains 2,533 words printed in a proportionally spaced typeface.

2.  This brief is printed in a proportionally spaced, serif typeface using Times New Roman 14 point font in text and Times New Roman 12 point font in footnotes produced by Microsoft Word Software.

3.  Upon request, undersigned counsel will provide an electronic version of this brief and/or copy of the word printout to the Court.

4.  Undersigned counsel understands that a material misrepresentation in completing this certificate, or circumvention of the type-volume limits in *Tex. R. App. Proc. 9.4(j),* may result in the Court's striking this brief and imposing sanctions against the person who signed it.

*/s/ Ralphaell V. Wilkins*
Ralphaell V. Wilkins

# APPENDIX TO PETITION FOR REVIEW

Accompanying this petition for review is a record that contains the following document, which is incorporated herein by reference.

**TITLE OF DOCUMENT**                                     **TAB**

1. Court of Appeals for the First District of Texas Opinion……………….. 1

Opinion issued July 30, 2015



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-14-00579-CR

———————————

### MAYRA FLORES, Appellant

### V.

### THE STATE OF TEXAS, Appellee

On Appeal from the 339th District Court
Harris County, Texas
Trial Court Case No. 1280239

## MEMORANDUM OPINION ON REHEARING

Appellant, Mayra Flores, was charged by indictment with murder.[1] The jury

found her guilty, and the trial court assessed punishment at 25 years' confinement.

---

[1] *See* TEX. PENAL CODE ANN. § 19.02(b) (Vernon 2011).

In one issue, Appellant argues the trial court abused its discretion by admitting the two audio recordings of her custodial interrogation.

On June 11, 2015, we issued our original opinion in this case. On June 25, 2015, Flores filed a motion for rehearing. We deny the motion for rehearing, withdraw our prior opinion and judgment, and issue this opinion and a new judgment in their place. Our disposition remains the same.

We affirm.

## Background

On October 3, 2010, Appellant and her boyfriend, Francisco Castellano, were arguing. In the course of the argument, Appellant stabbed Castellano, ultimately killing him. Officers W. Kuhlman and R. Hunter interrogated Appellant. Officer Kuhlman recorded the interview. Thirty-six minutes into the interrogation, the recording device stopped. About 20 minutes after that, Officer Kuhlman began recording again. The interrogation lasted for another 35 minutes before the recording ends.

At trial, Appellant sought to suppress the admission of the two audio recordings, claiming the recording cutting off at the end of the second recording prevented the State from establishing the admissibility requirements for both recordings. The trial court overruled the objection and admitted both recordings.

2

## Motion to Suppress Interrogation Audio Recordings

In her sole issue on appeal, Appellant argues the trial court abused its discretion by admitting the two audio recordings of her custodial interrogation.

### A.    Standard of Review

We review a trial court's denial of a motion to suppress under a bifurcated standard of review. *Turrubiate v. State*, 399 S.W.3d 147, 150 (Tex. Crim. App. 2013). We review the trial court's factual findings for abuse of discretion and review the trial court's application of the law to the facts de novo. *Id.* Almost total deference should be given to a trial court's determination of historical facts, especially those based on an evaluation of witness credibility or demeanor. *Gonzales v. State*, 369 S.W.3d 851, 854 (Tex. Crim. App. 2012). At a suppression hearing, the trial court is the sole and exclusive trier of fact and judge of the witnesses' credibility and may choose to believe or disbelieve all or any part of the witnesses' testimony. *Maxwell v. State*, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002); *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000).

Where, as here, a trial judge does not make explicit findings of fact, we review the evidence in the light most favorable to the trial court's ruling. *Walter v. State*, 28 S.W.3d 538, 540 (Tex. Crim. App. 2000). We will defer to the trial court's fact findings and not disturb the findings on appeal unless the trial court

3

abused its discretion in making a finding not supported by the record. *Cantu v. State*, 817 S.W.2d 74, 77 (Tex. Crim. App. 1991).

## B.     Analysis

Appellant's objection to the two audio recordings is based on article 38.22 of the Texas Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 38.22 (Vernon Supp. 2014). Section three of article 38.22 establishes certain requirements for the admissibility of the recording of a custodial interrogation. *Id.* art. 38.22, § 3(a). One of the requirements is "the recording device was capable of making an accurate recording, the operator was competent, and the recording is accurate and has not been altered." *Id.* art 38.22, § 3(a)(3). Appellant argues that, because the recording stopped recording and left a 20-minute portion of the interrogation unrecorded, the recording of the interrogation is not accurate.

As an initial matter, Appellant asserts in her brief that Officers Kuhlman and Hunter continued to talk with her for 20 minutes after the second recording stopped, that they discussed the events surrounding Castellano's death, and that she made exculpatory statements that are not otherwise in the recordings. While Appellant testified to this effect during her examination and cross-examination at trial, this testimony was not before the trial court at the time Appellant raised the motion to suppress earlier in the trial. Because this evidence was not before the trial court, it is not part of our appellate review. *See Weatherred v. State*, 15

4

S.W.3d 540, 542 (Tex. Crim. App. 2000) (holding appellate court reviews trial court's ruling on admissibility of evidence "in light of what was before the trial court at the time the ruling was made"). Accordingly, there was no evidence before the trial court at the time of the ruling that the conversation continued for any length of time after the recording cut off or that any statements were subsequently made that would call into question the accuracy of the nearly hour-long recorded conversation. Although Appellant continues to argue in her motion for rehearing that her conversation with the police lasted another 20 minutes after the second recording stopped and included exculpatory information, she presents no argument for how this evidence was before the trial court at the time it made its ruling.

Appellant's argument is premised on the idea that, because it ended abruptly, the second recording has been altered, rendering it inadmissible pursuant to article 38.22. *See* TEX. CODE CRIM. PROC. ANN. art. 38.22, § 3(a) (establishing condition for admissibility that recording has not been altered). In *Quinones*, the defendant claimed his recorded statement was inadmissible because, in part, "the tape had been altered by [a] fifteen second tapeover." *Quinones v. State*, 592 S.W.2d 933, 943 (Tex. Crim. App. 1980). The Court of Criminal Appeals held that "any alteration in a tape [does not] render[] the tape per se inadmissible. If the alteration is accidental and is sufficiently explained so that its presence does not affect the

5

reliability and trustworthiness of the evidence, the recording can still be admitted." *Id.* at 944.

*Quinones* was decided under a framework that predates article 38.22. *See id.* at 943 (citing *Edwards v. State*, 551 S.W.2d 731, 733 (Tex. Crim. App. 1977)). Since the enactment of article 38.22, however, the Court of Criminal Appeals has confirmed that inadvertent anomalies that do not affect the overall reliability of the recording do not constitute the impermissible sort of alteration contemplated by section 3 of article 38.22. *See Maldonado v. State*, 998 S.W.2d 239, 244–46 (Tex. Crim. App. 1999) (citing CRIM. PROC. art. 38.22, § 3; *Quinones*, 592 S.W.2d at 944); *see also Martines v. State*, 371 S.W.3d 232, 244 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (citing *Maldonado* and *Quinones* for same proposition).

In *Maldonado*, the defendant complained of a three-second and a one-second portion of the recording of his statement that had been "over-recorded." *Id.* at 244. The Court of Criminal Appeals noted there was no evidence that the over-recordings were intentional and they did not occur during his admission to killing the victim. *Id.* at 244–45. Based on this, the court held, "There is adequate evidence here to support the ... conclusion that the anomalies were merely inadvertent and did not affect the overall reliability of the tape." *Id.* at 245.

Assuming without deciding that an abrupt ending to a recording constitutes an alteration, there was no evidence that the abrupt ending was anything other than

6

inadvertent. Furthermore, the recording did not end while Appellant was discussing the events leading up to Castellano's death. Officer Kuhlman testified that the recordings "fairly and accurately depict[ed] the conversation that [he] had with the defendant on that day." There was nothing before the trial court at the time it made its ruling to contradict this testimony. We hold Appellant has failed to establish how the trial court abused its discretion by admitting the recording into the record.

We overrule Appellant's sole issue.

### Conclusion

We affirm the judgment of the trial court.


Laura Carter Higley
Justice

Panel consists of Chief Justice Radack and Justices Higley and Massengale.

Do not publish. TEX. R. APP. P. 47.2(b).

7